EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,

v.

MASSEY–FERGUSON, INC.,
Defendant-Appellee.

No. 78–2431.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 25, 1979.
Decided May 13, 1980.

Robert J. Loots, Milwaukee, Wis., for plaintiff-appellant.

Paul E. Mirengoff, E.E.O.C., Washington, D. C., for defendant-appellee.

Before SPRECHER, Circuit Judge, VAN DUSEN, Senior Circuit Judge *, and CUDAHY, Circuit Judge.

CUDAHY, Circuit Judge.

This action arose from charges of employment discrimination filed by Ronald Leal and Raymond Vidales with the Equal Employment Opportunity Commission (the "Commission") in 1970. The charges alleged that defendant, Massey-Ferguson, Inc. (the "Company"), had failed to hire each charging party because of his national origin in violation of Title VII of the 1964 Civil Rights Act (as amended, 42 U.S.C. § 2000e *et seq.*). In 1975 the Commission brought this action on behalf of all those adversely affected by the Company's hiring

* The Honorable Francis L. Van Dusen, Senior District Judge for the United States Court of Appeals for the Third Circuit, is sitting by designation.

practices and asserted a claim for backpay on their behalf. The Company's motion for partial summary judgment dismissing the backpay claims of class members who had not filed charges with the Commission was granted by the district court on the grounds that the Commission was barred by laches from asserting backpay claims for anyone other than the charging parties.[1] The Commission appeals from the grant of summary judgment, arguing that it did not delay inexcusably in asserting the backpay claims and that the Company was not materially prejudiced by the delay, even if it were inexcusable.

We agree with the district court's finding of inexcusable delay, although we do not agree with its interpretation of the complaint or its view of the conciliation requirement. However, we must reject its finding of material prejudice because the record presents genuine questions of material fact on the issue of prejudice, which make summary judgment improper. We therefore remand this aspect of the case to the district court for a full evidentiary hearing on the issue of prejudice.

### 1. Facts

Both Leal and Vidales allegedly tried to apply for work at the Company in the summers of 1969 and 1970, but neither one was allowed to fill out an application.[2] They each filed a charge with the Commission in October 1970. Both charges alleged that the Company did not hire them because of their national origin (Mexican-American). The Commission referred the charges to the appropriate state agency and obtained jurisdiction over them in January 1971. The Commission issued separate "letters of determination" to Leal and Vidales on June 12, 1973. Each letter found that there was "probable cause" for the Commission to believe that (1) the charging party had not been hired because of his national origin and (2) the Company's hiring policies had

adversely affected minority applicants, particularly blacks and Mexican-Americans.

Attorneys from the Commission met with representatives of the Company on July 31, 1973, in an attempt to "conciliate" the dispute. More specifically, the charges (or practices) conciliated were: (1) the refusal to let either Leal or Vidales fill out an application for employment in 1970, (2) the preferential hiring of relatives of those persons already employed at the Company, (3) the preferential hiring of college students for summer employment, (4) reliance on word of mouth recruiting (rather than advertising) and (5) reliance on recommendations of current employees. At this meeting the Company agreed to post notices of job openings and to stop preferential hiring of friends and relatives of employees. However, the Company did not agree to give Leal or Vidales job offers and backpay or to stop seeking college students for summer work. An employee of the Commission, Carole Culbreath, was present at this conciliation meeting and stated that "class relief was discussed." (Culbreath's affidavit, p. 1; July 18, 1977, transcript. p. 5.) The parties communicated by telephone and letter after this meeting, but did not manage to resolve the dispute.

In December 1974, the Commission issued a "right to sue" letter to Leal and informed the Company that conciliation had failed. Leal filed a private action in March 1975, which was settled for $2,000.00 in January 1977. The Company complained to the Commission about various delays in April 1975. The Commission filed its complaint on June 3, 1975, alleging that the Company had "failed to hire members of minority groups because of their race or national origin" and that the Company's hiring practices had an "adverse impact" on applicants who were members of minority groups. The complaint requested relief in the form of backpay and "other affirmative relief" to

1.  The district court entered a consent decree on August 22, 1978, which resolved the remaining issues in the instant case. The consent decree specifically reserved the order granting partial summary judgment for appeal.

2.  Unless otherwise indicated, these facts appear from the record and are not in dispute.

"make whole those persons adversely affected by the unlawful employment practices. . . ."

Discovery began in July 1975 and proceeded until October 1976. In July 1975 the Commission sought copies of all of the applications the Company had received from 1968 to 1975. In March 1976 the Company received the Commission's investigative file for the instant case, which concerned matters relating only to Leal, Vidales and the Company's hiring practices. Robert J. Loots, an attorney for the Company, stated that the Commission represented on March 13, 1976, that it was not seeking a fund for "unknown victims." On July 8, 1976, the Commission made the first undisputed reference to its efforts to identify members of the class and assert claims on their behalf. (Loots' affidavit, pp. 4–5.)

The Commission's trial attorney assigned to the instant case stated that, although the Commission indicated that it would not seek a fund for unknown victims like that in *EEOC v. Detroit Edison Co.*, 515 F.2d 301 (6th Cir. 1975), *vacated*, 431 U.S. 951, 97 S.Ct. 2669, 53 L.Ed.2d 267 (1977), it had never represented that backpay claims would be limited to Leal and Vidales or to the years 1968 through 1970. She also stated that she told the Company that the EEOC would identify the individuals against whom the Company had discriminated and would seek backpay and injunctive relief on their behalf, but she did not indicate when she made these statements. (Young's deposition, p. 2.)

In August 1976 the Commission sent questionnaires to 500 members of minority groups who had unsuccessfully applied for work at the Company between May 1972 and May 1975. In December 1976 the Commission informed the Company that it would seek backpay totalling $347,292.20 on behalf of twenty-three of these applicants, all of whom had been rejected for unskilled positions. Most of these individuals had applied for work after the June 1973 reasonable cause determination and the July 1973 conciliation meeting.

The Commission and the Company have submitted affidavits and depositions of several employees of the Company, which describe the manner in which employees were selected. All applicants were required to fill out an application. From August 1972 until November 1975 all applications were coded to indicate the race of the applicant so the Company could keep records on the number of minorities applying for jobs. After November 1975 information dealing with the race of an applicant was recorded on a separate applicant flow log.

From 1966 to 1973 Thomas Thielen was the Personnel and Industrial Relations Manager for the Company's Racine facility. During this period Thielen decided which applicants would be interviewed.

"We would use a random selection depending upon did they sign the application for one; did they make it out complete; did they write reasonably legible [sic] because in our line of work it's necessary that they are able to write legibly."

If a job opening was only temporary "we couldn't call in somebody who was working somewhere else." (Thielen's deposition, pp. 22–24.) Thielen usually conducted the interviews during this period.

Applicants for unskilled jobs were interviewed only by Thielen, but for skilled jobs Thielen would make the "initial" selection and a supervisor would make the "actual" selection. (Thielen's deposition, pp. 23–25.) The Company's unskilled jobs required only the ability to read, write, do arithmetic and perhaps drive a vehicle. Skilled jobs were generally filled by persons already working at the Company in unskilled capacities.

In Thielen's interviews, he determined whether an applicant could read, write or count in the following manner:

"I would explain to the applicant in the interview process what's involved in the kind of work that we were going to hire somebody in, and my normal phrase of reference was 'Do you think you would have any problem doing that job for us,' and normally I would have to say they said no." (Thielen's deposition, pp. 39–40.)

Similar procedures were followed from 1973 to 1977 when Thomas J. Noteman served as the Personnel and Industrial Relations Manager. Noteman decided which applicants would be interviewed for unskilled jobs by examining the application to see if it was neat and complete, to determine the applicant's work history and to ascertain his reason for leaving his last job. (Noteman's deposition, pp. 16–19.) He also stated that the "only method we would have for [evaluating] reading or writing skills would be by [examining] the application itself." A math test was given to determine an applicant's ability to do arithmetic. (Noteman's deposition, p. 23.) Noteman did not describe the interviews he conducted. In his affidavit Noteman stated that neither he nor Thielen had any memory of, or notes on, the specific qualifications of any applicant or the reasons why a particular applicant was hired or rejected. (Noteman's affidavit, pp. 2–3.)

### 2. Motion for Partial Summary Judgment

The Company brought a motion for partial summary judgment to dismiss the backpay claims of the twenty-three individuals identified by the Commission in 1976. The district court granted the motion, holding that the Commission was barred by laches from asserting these claims because the Commission's delay in asserting the claims was inexcusable and had substantially prejudiced the Company.

In concluding that the Commission's delay was inexcusable, the court indicated that the discussion of equitable relief for the class at the 1973 conciliation meeting and the language of the complaint were not clear enough to inform the Company that backpay would be sought for persons other than the charging parties. Under this analysis, the Commission did not assert claims on behalf of individual class members until December 1976. The court also stated that, although the Commission may demand less than the full relief available at the conciliation stage, "it is not entitled to disregard entirely conciliatory efforts to obtain a particular type of relief which it feels is required." The district court did not discuss its finding of prejudice in detail, but briefly noted that the Company's affidavits established "the loss of testimony due to the passage of time and the defendant's lack of knowledge of the claim asserted."

### 3. Laches—Standard of Review

Title VII of the 1964 Civil Rights Act (as amended in 1972) imposes strict limits on the time within which private parties may file charges with the Commission or file suit against an employer, but it does not contain an express limitation on the time within which the Commission may bring an enforcement suit. However, the Commission may be barred by laches from filing a suit if it has delayed inexcusably and the defendant was materially prejudiced by its delay. *Occidental Life Insurance Company of California v. EEOC*, 432 U.S. 355, 373, 97 S.Ct. 2447, 2458, 53 L.Ed.2d 402 (1977). A private plaintiff may be similarly barred by laches from asserting a claim for backpay on behalf of class members. *Moody v. Albemarle Paper Company*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Reading these two cases together, we conclude that the Commission may also be barred from asserting a backpay claim because of laches in appropriate circumstances.[3]

Recourse to the doctrine of laches is appropriate only if the Commission has "unduly," "inexcusably," "unreasonably" or "inordinately" delayed in asserting a claim and that delay has "substantially," "materially" or "seriously" prejudiced the defendant's ability to conduct its defense. The Supreme Court has characterized delay and prejudice as questions of fact. Thus in *Albemarle* the Court stated that a district court's finding of laches after a full trial

---

**3.** The Eighth and Fourth Circuits have held that the Commission may be barred by laches from filing suit. *See EEOC v. Westinghouse Electric Corporation*, 592 F.2d 484 (8th Cir. 1979); *EEOC v. Liberty Loan Corporation*, 584 F.2d 853 (8th Cir. 1978); *EEOC v. American National Bank*, 574 F.2d 1173 (4th Cir. 1978), *cert. denied*, 439 U.S. 876, 99 S.Ct. 213, 58 L.Ed.2d 190.

should be reviewed to determine whether the underlying factual findings were "clearly erroneous" and to determine whether the district court had "abused" its traditional discretion to locate "a just result" by applying the doctrine of laches. 422 U.S. at 424, 95 S.Ct. at 2375.

In the instant case, the findings of delay and prejudice required for laches were made in the context of the Company's motion for partial summary judgment so the "clearly erroneous" standard is not an appropriate criterion of review. *Silverstein v. United States*, 419 F.2d 999, 1001 n.3 (7th Cir. 1969), *cert. denied*, 397 U.S. 1041, 90 S.Ct. 1362, 25 L.Ed.2d 652 (1970). Rather, we must determine if the Company, as the moving party, met its burden of showing that there was no genuine issue as to any material fact. In doing so we must view the record and the inferences to be drawn from facts disclosed in the record in the light most favorable to the party opposing summary judgment (*i. e.*, the Commission). *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157–160, 90 S.Ct. 1598, 1608–1610, 26 L.Ed.2d 142 (1970).

Once delay and prejudice are established, the district court may, in its discretion, apply the doctrine of laches to bar certain claims or an entire complaint. The Supreme Court in *Albemarle* indicated that the decision to apply laches may be reviewed to determine whether the district court has abused its discretion. The Court noted that backpay is an equitable remedy which the district court, in its discretion, may award. However, this discretionary power was intended to allow the court to award complete relief, not to limit appellate review. *Id.*, 422 U.S. at 421, 95 S.Ct. at 2373. The district court must exercise its discretionary power to award backpay in light of the purpose of Title VII, which are to achieve equality of employment opportunities and to "make whole" victims of past discrimination. *Id.*, 422 U.S. at 416–418, 95 S.Ct. at 2371–2372.

■ In the instant case, we conclude that summary judgment was improperly granted because several genuine issues of material

fact are present relating to prejudice. We therefore have not found it necessary to determine whether the district court abused its discretion in applying the doctrine of laches to the facts of this case.

### 4. Delay

The Commission makes several valid criticisms of the district court's treatment of the delay issue. However, in spite of these criticisms and of our obligation to view the record in the light most favorable to the Commission, we agree with the district's conclusion that the record does not raise a genuine issue of material fact relating to the question of delay.

#### A. Interpretation of the Complaint

■ The Commission argues that the district court erred in concluding that the complaint was not sufficient to inform the Company that backpay would be sought for persons other than the charging parties, and we agree with the Commission's view. The complaint requested backpay for all those persons adversely affected by the Company's hiring practices. Leal had filed a private suit against the Company in March 1975, and thus Vidales was the only charging party for whom the Commission could bring suit. Given these facts it is difficult to understand how the Company could read the complaint as requesting backpay only for Vidales because it sought backpay for all "those persons adversely affected. . . ."

We do not agree with the district court's view that the prayer for backpay for adversely affected persons was insufficient notice of the claims on behalf of the class when viewed in light of the prior administrative proceedings. Although the Commission did not assert class backpay claims before the complaint was filed in June 1975, there is no evidence that it had foreclosed the possibility prior to that time. Therefore, in accordance with the liberal notice pleading philosophy of the Federal Rules of Civil Procedure and our obligation to view the evidence in the light most favorable to the Commission, we believe that the com-

plaint was sufficiently clear to inform the Company that there would be a backpay claim on behalf of the class.

### B. Conciliation

The Commission also argues that the district court incorrectly required the Commission to raise class backpay claims during conciliation as a condition of pursuing this remedy in subsequent litigation. We agree that it is necessary to clarify, in this context, the scope of conciliation required.

■ While the Commission must conciliate the charges or practices which are at issue (i. e., the specific instances of discrimination or the practices which adversely affect minorities), there is no duty to conciliate with respect to every possible form of relief which might be sought in order to remedy these practices. The Supreme Court has stated that "Title VII contains no legal bar to raising backpay claims after the complaint for injunctive relief has been filed, or indeed after a trial on that complaint has been had." Albemarle, supra, 422 U.S. at 424, 95 S.Ct. at 2374 [footnote omitted]. Furthermore, Rule 54(c) of the Federal Rules of Civil Procedure allows the district court to award the relief to which a prevailing party is "entitled" regardless whether such relief was sought in the complaint.

■ To limit the scope of relief to the remedies sought during conciliation would unduly constrain the district court's ability to fashion a remedy which adequately responds to the objectives of the Act. Therefore backpay claims need not be specifically raised during conciliation as a precondition to seeking backpay through litigation. However, under the circumstances of this case, failure to conciliate on class backpay is relevant to the question of unreasonable delay and, therefore, ultimately to laches.

### C. Unreasonable Delay

After having reviewed the record in the instant case in the light most favorable to the Commission, we agree with the district court's conclusion that there was no genuine issue of material fact on the issue of unreasonable delay. Our interpretation of the complaint and of the conciliation requirement in the preceding sections does not render the delay in the instant case reasonable.

The charges were filed with the Commission in October 1970 and it issued a letter of determination concerning Leal, Vidales and the Company's hiring practices in June 1973, but it did not mention the possibility of backpay for class members during that time. "Equitable relief" for the class was discussed at the July 1973 meeting, but the Commission does not argue on appeal that such relief included backpay. The Commission's trial attorney assigned to the case has stated that she told the Company of the backpay claims but has not revealed the date on which she made this statement. Nine months after the complaint was filed the Commission told the Company that it was not seeking a fund for "unknown victims." The parties disagree as to the meaning of this phrase, but all of these facts, taken together, do not raise a question of material fact as to when backpay for the class was first raised. We therefore conclude that it was mentioned for the first time when the complaint was filed.

The complaint was filed in June 1975, 4 years and 9 months after the charges were filed. Even shorter periods have been found unreasonable in cases involving the dismissal of an entire complaint because of laches. We see no reason to attempt to distinguish these cases from the instant one on the grounds that the instant case involves the lesser consequence of dismissing only the backpay claims of class members.

■ Thus, in EEOC v. Liberty Loan Corporation, 584 F.2d 853, 857–858 (8th Cir. 1978), the Eighth Circuit applied Occidental Life and found that a delay of 4 years and 4 months between the time when the charges were brought and the time when the Commission brought suit was unreasonably long. Similarly, in EEOC v. Westinghouse Electric Corporation, 592 F.2d 484 (8th Cir. 1979), the court did not overturn the district court's finding that delays of 3 and 4 and ½

years from the time charges were filed to the time the complaint was filed were unreasonable. A delay of 4 years and 10 months between the time a charge was filed with the Commission and the time when the complaint was filed was found unreasonable in *EEOC v. American Machine & Foundry, Inc.*, 12 Empl.Prac.Dec. ¶ 11,200 (M.D.Pa. 1976). We therefore conclude that the delay of 4 years and 9 months in the instant case was unreasonable.

### D. Inexcusable Delay

We also conclude that there is no genuine question of material fact on the issue of inexcusable delay although we have viewed the record in the light most favorable to the Commission. The Commission has attempted to explain its delay, but its reasons are not legally cognizable excuses in the context of laches.

■ The Commission argues that its large backlog of cases should excuse its delay in asserting backpay claims, but, without more, the fact that the Commission has a heavy caseload will not excuse a delay in filing suit. The Eighth Circuit has rejected this excuse, stating that, if the Commission has not documented its case load and explained how it delayed the filing of the complaint in question, the delay gives rise to an inference of unreasonableness which supports the grant of summary judgment for the defendant. "[T]he EEOC, as the party best able to provide documentary evidence concerning its work load, should have shouldered the burden of explaining the delay . . . ." *EEOC v. Liberty Loan Corporation*, 584 F.2d 853, 858 (8th Cir. 1978). *See also, EEOC v. North Central Airlines*, 475 F.Supp. 667, 671 (D.Minn. 1979) and *EEOC v. Bell Helicopter Company*, 426 F.Supp. 785, 793 (N.D.Tex.1976). A heavy case load is an even less compelling excuse in the instant case because the Commission failed to inform the Company of the possibility that backpay would be sought, a fairly simple communication which would require far less effort by the Commission than filing suit would presumably involve.

■ The Commission also argues that extensive discovery must be conducted before it can identify members of a class and inform the Company of their backpay claims. While this may well be true, it is not a justification for the delay because the Commission is not required to give the Company details of class backpay claims. It would be sufficient merely to inform the Company that backpay claims for class members will be asserted, but specifics will not be available until discovery is completed. Such notice would not limit the Commission's recognized ability to compromise charges by settling for less than all the relief which would be available if it brought suit. Thus, the Commission has not offered a legally sufficient excuse for its delay.

### E. Conclusion

We conclude that there is no genuine question of material fact on the issue of inexcusable and unreasonable delay in the instant case. However, we do not fully agree with the district court's analysis on the issue of delay because, as noted above, we have concluded that: (1) the Commission is not required, as a precondition to bringing suit, to raise backpay claims during conciliation and (2) the complaint put the Company on notice that backpay would be sought for class members. We therefore agree, with these modifications, with this portion of the district court's opinion.

### 5. Prejudice

Prejudice is the second element of laches, and most cases have required "substantial," "material" or "serious" prejudice, which was caused by the Commission's delay rather than by the defendant's negligence. *See Fowler v. Blue Bell, Inc.*, 596 F.2d 1276, 1279–1280 (5th Cir. 1979). *Fowler* was a private Title VII case in which the district court granted the defendant's summary judgment motion on the ground that laches barred the plaintiff's suit. The Fifth Circuit reversed, holding that the facts established by the district court did not allow

findings of inexcusable delay[4] or substantial prejudice. The defendant in *Fowler* had asserted that it needed the testimony of several managers who were no longer employed by the defendant, but on appeal the court held that this factor would not establish prejudice unless the defendant showed that the witnesses were unavailable to testify. The defendant in *Fowler* also destroyed all the records relevant to the charging party's claim in disregard of administrative regulations, although it was aware of the Commission's investigation. Even though the defense was prejudiced by this action, the court held that it was the result of the defendant's "own negligence and disregard of administrative regulations" and was not due to the plaintiff's delay. It was therefore not the kind of prejudice contemplated by the doctrine of laches. (*See also Bernard v. Gulf Oil Company*, 596 F.2d 1249, *rehearing granted*, 604 F.2d 449 (5th Cir. 1979).)

Sufficient prejudice has been found when records were inadvertently lost or destroyed due to a corporate reorganization in which the facility at which the discrimination allegedly occurred was closed. *EEOC v. Liberty Loan*, 584 F.2d 853, 858 (8th Cir. 1978). In *Liberty Loan* the court also held that, even if the records could be found, the defendant should not be required to expend the large amounts of time and money which would be necessary to locate former supervisory and management personnel who were no longer employed by the defendant. Their testimony would have been an important part of the defense because the charging party was a former employee who claimed that the defendant had discriminated against her while she was employed and when she was terminated. Similarly, the loss of documents and access to employees when a facility was sold, in addition to the unavailability of some supervisors, constituted "substantial prejudice" in *EEOC v. American Petrofina Company of Texas*, 17 Empl.Prac.Dec. ¶ 8555 (E.D.Tex.1977).

The destruction of documents pursuant to Commission regulations combined with the faded memory of a crucial 70-year-old witness was sufficient prejudice in *EEOC v. C & D Sportswear Corporation*, 398 F.Supp. 300, 302–303 (M.D.Ga.1975). In *C & D Sportswear* the charging party had an argument with the company president and as a result was fired. She claimed that she was fired because of her race but laches barred the Commission's suit on her behalf six years later because the president's memory had faded and documents had been destroyed.

A question of fact on the issue of prejudice which made summary judgment improper was presented in *EEOC v. Westinghouse Electric Corporation*, 592 F.2d 484, 486–487 (8th Cir. 1979). Westinghouse argued on appeal that the Commission's delay was prejudicial because it had destroyed some records, some supervisory personnel were no longer employed by Westinghouse and the memories of available witnesses had been "eroded by the passage of time." The court remanded for fuller consideration of the prejudice issue because Westinghouse still had several different types of records including (1) a list of all persons employed for the relevant years which indicated each person's race, (2) applicant flow charts for some years which included the applicant's name, race, and the final action taken on the application and (3) records of disciplinary actions. In addition, two-thirds of the supervisors whose testimony would be relevant were still employed by Westinghouse.

In the instant case, the Company argues that it was materially prejudiced by the Commission's delay because the memories of its witnesses had faded. The Company claims that the testimony of these witnesses is crucial to its defense because no written records were kept relating to the reasons why any of the applicants were hired or not hired. The reasons why an applicant was or was not interviewed were also not recorded. The Company argues that the in-

---

4. We do not entirely agree with the *Fowler* court's narrow reading of *Occidental Life* on the issue of delay.

stant case is similar to *C & D Sportswear, supra*, and therefore that the prejudice resulting from the fading of its witnesses' memories is sufficient for the application of laches.

However, the Company still has all of the employment applications it received during this period, and, unlike the situation in *Liberty Loan* or *American Petrofina*, both *supra*, the persons who made the employment decisions are still available to testify. There is evidence that applicants were selected for interviews on the basis of the information contained in these applications and that little additional information relating to their qualifications was elicited in the interviews. The jobs in question were unskilled entry level positions which did not require any special qualifications. The instant case is thus similar to *Westinghouse, supra*, in which the company had access to the relevant documents and witnesses but the witnesses' memories had faded.

We conclude that several genuine issues of material fact are presented by this evidence, and therefore summary judgment was improper. The Company may well be able to determine the reasons why each of the twenty-three class members were not interviewed and hired by merely examining their applications. The evidence, viewed in a light favorable to the Commission, does not negate this possibility.

Thielen and Noteman made the decisions on interviewing and hiring, and they are not unavailable. Indeed, they are still employed by the Company, and their statements form the basis of much of the evidence before us relating to prejudice. They have indicated that they considered an applicant's work history, his reason for leaving his prior job and the neatness and the completeness of his application in deciding whom to interview. All of these factors may still be discerned from the applications. In interviews neither Thielen nor Noteman tried to determine by means of any objective test whether an applicant could read or write. A math test was given to some applicants, but the Company has not shown that these test results are now unavailable.

Thus a question of fact exists as to whether the Company is prejudiced at all and, if so, whether it is materially prejudiced.

Most importantly, the Company did not keep any records of the reasons why an applicant was accepted or rejected even after the determination of reasonable cause in June 1973 and the conciliation meeting in July 1973, and most of the twenty-three class members applied for jobs after this date. It appears that the Company's failure to keep records after it was aware that many of its hiring practices were the subject of a Commission investigation may have been unreasonable and that this failure was the main cause of any resulting prejudice. The Company argues that it is prejudiced because the district court will infer a discriminatory motive if the Company cannot articulate a non-discriminatory motive for failing to hire each of the twenty-three class members. While it is not clear that the district court would do this, the prejudice resulting from such an inference would not necessarily be caused by the Commission's delay. In any event, we are reluctant to sanction such a failure to keep records by finding that there is no genuine issue of material fact as to whether the resulting prejudice is properly attributable to the Commission's delay.

Moreover, even · assuming that Thielen and Noteman are unable to remember why various hiring decisions were made and that the reasons cannot be determined from examining the applications, the Company has not shown that their inability to remember was due to the Commission's delay. It is entirely possible that they would not remember these reasons for more than a few months after a decision was made on an application. If their memories faded quickly, the Company would have been prejudiced to the same extent as it now claims, but this prejudice would be due to the Company's failure to keep records, not to the Commission's delay. We cannot conclude from this record that the memories of the personnel managers faded only after the point at which the Commission's delay became unreasonable. Thus, the Commis-

sion's delay may not have caused the prejudice.[5]

We therefore vacate the summary judgment on the issue whether the Commission's delay resulted in material prejudice to the Company and remand for a full evidentiary hearing on the issue of material prejudice consistent with this opinion.

---

5. The Company also argued that it is prejudiced because Thielen and Noteman do not recall when applications were being accepted, when the practice of preferring relatives of employees was discontinued, or the details of its affirmative action program. The loss of such testimony may well be prejudicial and the Company may introduce evidence to that effect at the evidentiary hearing in the district court on remand. However, in light of the questions of fact relating both to the Company's ability to identify a non-discriminatory reason for not hiring the class members and its failure to record those reasons, we feel summary judgment is improper and it is necessary to consider the issue of prejudice in a full evidentiary hearing. We therefore have not considered whether the record presents questions of fact relating to the prejudicial nature of these other factors.