**Geraldine G. CANNON,**
**Plaintiff-Appellant,**

v.

**UNIVERSITY OF HEALTH SCIENCES/**
**THE CHICAGO MEDICAL SCHOOL,**
**et al., Defendants-Appellees.**

**Geraldine G. CANNON,**
**Plaintiff-Appellant-Cross-Appellee,**

v.

**SOUTHERN ILLINOIS UNIVERSITY**
**and Board of Trustees of the University**
**of Illinois, Defendants-Appellees-Cross-**
**Appellants.**

**Nos. 82–2239, 82–2297 and 82–2298.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 17, 1983.

Decided June 14, 1983.

As Amended June 16, 1983.

Rehearing and Rehearing En Banc
Denied July 20, 1983.

John M. Cannon, Chicago, Ill., for plaintiff-appellant.

Stuart Bernstein, Mayer, Brown & Platt, Chicago, Ill., for defendants-appellees.

Before PELL and ESCHBACH, Circuit Judges, and VAN PELT, Senior District Judge.*

* Robert Van Pelt, Senior District Judge for the District of Nebraska, is sitting by designation.

PELL, Circuit Judge.

The plaintiff-appellant, Geraldine Cannon, appeals from the district court's grant of summary judgment in favor of five medical schools and the individual admissions representatives thereof. Cannon alleges that the medical schools violated her civil rights by discriminating against her application on the basis of age and sex. The district court granted summary judgment as to three of the defendants, University of Health Sciences/The Chicago Medical School (Chicago Medical), Loyola University of Chicago (Loyola), and Rush-Presbyterian-St. Luke's Medical Center (Rush), on the ground of laches. The summary judgments granted the remaining two defendants, Southern Illinois University (SIU) and the Board of Trustees of the University of Illinois (Illinois), were on the ground of mootness.

The primary issue on appeal is whether laches precludes Cannon's claims against all five defendants. Two related questions are: (1) whether the defendants are immune from all damage claims; and (2) whether SIU and Illinois can rely on laches as a defense to Cannon's claim pursuant to 42 U.S.C. § 1983.

## I. FACTS

### A. General Background

In the fall of 1974, Cannon applied for admission to the 1975 entering class at every medical school in the state of Illinois. Cannon was then over thirty years of age and an experienced surgical nurse. She was completing her baccalaureate degree at the time she filed the medical school applications. All of the medical schools, including the five named as defendants in this suit, denied Cannon admission.[1] Her academic qualifications, including her college grade point average and her score on the Medical College Admission Test (MCAT),

1. Cannon reapplied to Illinois the following year. Her reapplication was denied in March, 1976.

were competitive with students who were admitted to the medical schools.[2]

In the summer of 1975, Cannon filed suit against two of the medical schools that had denied her admission, the University of Chicago (Chicago) and Northwestern University (Northwestern). She alleged, *inter alia,* sex discrimination in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. (Title IX). Specifically, Cannon claimed that her application was denied pursuant to a published admissions policy that discouraged applicants over thirty years of age. She asserted that this policy had an adverse impact on women and failed validly to predict success either in medical school or in practice. In 1979, the Supreme Court, reversing the opinion of this court, held that Title IX provided a private right of action. *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (reversing and remanding 559 F.2d 1063 (7th Cir.1977)). The remand was limited to consideration of the Title IX claim. The district court again dismissed for failure to allege purposeful discrimination. This holding was affirmed by this court, 648 F.2d 1104 (7th Cir.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 1254, 75 L.Ed.2d 482 (1983).

In late 1975, Congress passed the Age Discrimination Act of 1975, Pub.L. No. 94–135, 89 Stat. 728 (codified at 42 U.S.C. §§ 6101–6107) (Age Act). The date on which the Age Act took effect was deferred until the Department of Health, Education & Welfare (HEW) promulgated interpretative regulations in 1979. *See* 42 U.S.C. § 6102. These regulations specified that age could not be considered by medical schools in making admission decisions. 45 C.F.R. Part 90 (1979). Since the issuance of the regulations, age has not been a factor in the admissions decisions of the defendant medical schools.

Two aspects of the medical school admission process are relevant to this appeal. First, in 1977, the MCAT was revised. The sections of the prior MCAT that tested verbal skills and general information were eliminated. The new test was designed to measure more accurately an applicant's problem solving abilities, scientific knowledge, and reasoning skills. All students applying for entrance to medical school in 1980 and subsequent years have been required to submit a score from the "new" MCAT.[3] Second, at all pertinent times the defendant medical schools have had a policy of reconsidering applicants for admission only if a new application was filed each year for which reconsideration was sought. This policy was implemented to avoid the accumulation of denied applications. Such a procedure was deemed necessary because of the large volume of annual applications.

### B. Administrative Remedies

In 1975, the same year Cannon filed suit against Chicago and Northwestern, the Department of Labor notified Rush that Cannon had advised the Department of her intent to sue Rush for a violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 626(c). Also in 1975, Cannon filed an administrative complaint against SIU with the Office of Civil Rights.

In 1976, Cannon instituted a complaint against Rush with the Office of Civil Rights. The agency obtained data from Rush regarding the admission process applicable to the 1975 entering class. Between 1976 and 1979, there was apparently no communication between any administrative agency and any of the defendants.

In 1979, Cannon filed a revised discrimination complaint with the Office of Civil Rights against SIU and Rush. The schools supplied the requested data. The charge was then referred to Washington for a policy consideration.

### C. Prior Judicial Proceedings on Present Suit

On November 29, 1979, Cannon commenced this action. She had been rejected

---

2. Cannon asserts that her combined grade point average and MCAT score gave her approximately a seventy percent chance of admission to medical school.

3. Apparently, the medical schools accepted scores from either the "old" or "new" MCAT for persons seeking to enter medical school in 1978 and 1979.

by each school between three years, eight months and nearly five years earlier. Cannon alleged violations of the Equal Protection Clause and of Illinois law. She also sought declaratory and injunctive relief, as well as damages, under both Title IX and the Age Act. Cannon subsequently amended her complaint to add a claim against Illinois and SIU, both state universities, pursuant to 42 U.S.C. § 1983. The Section 1983 claim sought both damages and injunctive relief. The statute of limitations applicable to the claim for damages pursuant to 42 U.S.C. § 1983 had not run at the time this claim was added to Cannon's complaint.

On October 13, 1981, the district court held that all claims for damages under Title IX were foreclosed by this court's holding in *Lieberman v. University of Chicago*, 660 F.2d 1185 (7th Cir.1981), *cert. denied*, 456 U.S. 937, 1102 S.Ct. 1993, 72 L.Ed.2d 456 (1982). Judge Robson also ruled that Cannon could not rely on the Age Act because the alleged discrimination occurred before the Act was passed by Congress and long before its July 1, 1979, effective date. Finally, the district judge granted summary judgment in favor of SIU, Illinois, Rush, and Loyola on the grounds of laches.[4] Judge Robson found the delay between the discriminatory acts and the filing of this suit to be unreasonable. He also found that the admissions criteria of the defendant medical schools had changed significantly since Cannon's 1974 application, particularly in light of the 1977 revision of the MCAT, and that requiring the schools to evaluate Cannon's candidacy on the basis of her 1974 applications would be prejudicial to both the autonomy of the medical schools' admission processes and those applicants who applied, submitted a new MCAT score, and met the admissions criteria in each ensuing year.

On June 15, 1982, Judge Robson issued a second memorandum opinion and order. He granted Chicago Medical's motion for summary judgment on the ground of laches,

relying on the same analysis articulated in the October 13, 1981 memorandum opinion as to the other four defendants. Judge Robson reconsidered whether Illinois and SIU could rely on laches in defense of Cannon's Section 1983 claim. He held that the Eleventh Amendment foreclosed any damage claim against the state universities but that the statute of limitations applicable to a Section 1983 damage claim nevertheless governed the claims for equitable relief pursuant to Section 1983. Judge Robson therefore vacated his October 13, 1981 ruling that laches barred the Section 1983 claims against SIU and Illinois.

Finally, Judge Robson considered whether the Section 1983 requests for injunctive and declaratory relief were moot. He held that they were, reasoning that the effect of the Age Act and the regulations thereunder was the complete termination by the defendants of their age-preference policies. Judge Robson noted that Cannon could obtain the same result as an injunction would ensure if she simply reapplied to the medical schools. The court therefore granted summary judgment for SIU and Illinois on the ground of mootness.

Cannon has appealed from the two orders granting summary judgment. On appeal, Cannon urges:

(1) that her claims are not moot because the effect of the alleged violation has not been eradicated by interim relief or events;

(2) that the doctrine of laches does not bar any of her claims because the delay was reasonable and the defendants were not prejudiced in the conduct of their defense;

(3) that damages are available under Title IX and against Illinois and SIU pursuant to 42 U.S.C. § 1983.

On cross-appeal, SIU and Illinois assert that laches controls Cannon's Section 1983 claim against them because they are immune from any damage claim and the Section 1983 action is therefore purely equitable.

---

4. Chicago Medical had not joined in the other defendants' motion for summary judgment on

the basis of laches.

In light of our disposition of this appeal, we need not address the question of mootness.

## II. AVAILABILITY OF DAMAGES

We first address whether the district court correctly held that Title IX precludes any claim for damages. We then turn to whether the district court erred in holding that Illinois and SIU, as well as the individually named representatives of those two medical schools, were immune from any claim for damages under 42 U.S.C. § 1983 because of the Eleventh Amendment.

### A. Availability of Damages under Title IX

■ In *Lieberman v. University of Chicago,* 660 F.2d 1185 (7th Cir.1981), *cert. denied,* 456 U.S. 937, 102 S.Ct. 1993, 72 L.Ed.2d 456 (1982), this court was presented with the question whether damages are an available remedy under Title IX. Noting the availability of other remedies, including attorneys' fees, *see* 42 U.S.C. § 1988, injunctive relief under Title IX, and federal administrative action, *see* 20 U.S.C. § 1682, and this court's perception that a damage remedy was not entirely consistent with the legislative purpose of Title IX, the *Lieberman* court held that damages were not an available remedy. 660 F.2d at 1188. Because of that holding, the court expressly declined to consider the appellees' argument that Lieberman had failed to mitigate her damages. *Id.* at 1188 n. 10.

Cannon seeks to distinguish her case from *Lieberman* on the basis that the failure to mitigate damages, present in *Lieberman,* is absent here. That argument is unpersuasive as a basis for distinction in light of the *Lieberman* court's having expressly declined the opportunity to rely on the asserted failure to mitigate. Cannon's other argument in support of her assertion that damages are available under Title IX is premised on a Second Circuit case in which

the issue was the availability of damages under Title VI. *See Guardians Association of the New York City Police Department, Inc. v. Civil Service Commission,* 633 F.2d 232 (2d Cir.1981), *cert. granted,* 454 U.S. 1140, 102 S.Ct. 997, 71 L.Ed.2d 291 (1982). In light of the clear holding of *Lieberman,* a case that we decline to reconsider, Cannon's reliance on the analogy to Title VI is misplaced.

The district judge was correct in holding that *Lieberman* precludes any claim for damages based on Title IX.

### B. Eleventh Amendment Immunity

■ The district court held that Cannon's damage claims against SIU and Illinois, pursuant to 42 U.S.C. § 1983, were barred by the Eleventh Amendment. The Eleventh Amendment acts as a jurisdictional bar to suit against a state in federal court, absent the state's consent to the suit.[5] *Edelman v. Jordan,* 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974).

Cannon urges that the district court erred because: (1) her claims are against individual representatives of the two schools as well as the schools themselves; (2) no judgment against the schools or their representatives would result in a claim against the state treasury; and (3) even though Illinois and SIU are subject to control by the State, they are not the State itself for purposes of the Eleventh Amendment.

SIU and Illinois are recognized as state agencies under Illinois law. *Elliott v. University of Illinois,* 365 Ill. 338, 6 N.E.2d 647 (1936); Ill.Rev.Stat. ch. 127, § 132.3 a (1977). The powers and duties of the Boards of Trustees are governed by chapter 144 of the Illinois Revised Statutes. The court below, as well as the district court in *Love v. University of Illinois,* 76 C 954 (N.D.Ill. Feb. 7, 1978), relied upon these factors in concluding that the state univer-

5. Cannon does not argue on appeal that the State consented to suit. The only possible basis of consent would be the statutory provision authorizing the University of Illinois to "sue and be sued." Ill.Rev.Stat. ch. 144, § 22 (1979). We concur with those courts holding that such a statutory provision does not constitute "consent." *Hamilton Mfg. Co. v. Trustees of State Colleges,* 356 F.2d 599, 601–02 (10th Cir.1966); *Love v. University of Illinois,* 76 C 954 (N.D.Ill. Feb. 7, 1978).

sities are immune to any claim for damages by reason of the Eleventh Amendment. Their result is consistent with that reached by the Tenth Circuit in *Brennan v. University of Kansas,* 451 F.2d 1287, 1290 (10th Cir.1971) (relying on Kansas law).

■ The Eleventh Amendment is applicable even though Cannon has attempted to name individual representatives of the universities, as well as the institutions themselves, as defendants. Cannon's complaint refers only to "John Doe" and "Mary Roe." Even if discovery resulted in Cannon's identifying the individuals and if amending the complaint was held to be consistent with Rule 15(c)(2), Fed.R.Civ.P. 15(c)(2),[6] the Eleventh Amendment still bars the claims for damages.

In *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Court held that the Eleventh Amendment bars a suit "by private parties seeking to impose a liability which must be paid from public funds in the state treasury." *Id.* at 663, 94 S.Ct. at 1356. Relying on *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945), the *Edelman* Court reasoned that if the damage award is to be paid by the State, the State is the real party in interest even though individual officials might be named as nominal defendants. 415 U.S. at 663, 94 S.Ct. at 1355. In this case, because the state universities are the alter ego of the State, any damage award chargeable to university assets is an award against the State itself. No authority supports Cannon's argument that this analysis is altered by the possibility that a damage award would be met through insurance proceeds or from federal funds. If Cannon's suit would result in a damage award payable by the universities, it is barred by the Eleventh Amendment.

Cannon's allegations pertain to the enforcement, by university authorities, of university policies that allegedly condoned discrimination on the basis of age with a resulting disparate impact on women. Recovery is sought from the institutions, not the individuals. As the Supreme Court observed in *Edelman,* it is a "virtual certainty [that any damage award will] be paid from state funds, and not from the pockets of the individual state officials who were the defendants in the action." 415 U.S. at 668, 94 S.Ct. at 1358. The district judge correctly held, therefore, that Cannon could not recover damages from Illinois or SIU pursuant to her Section 1983 claim.

## III. AVAILABILITY OF LACHES TO SIU AND ILLINOIS

We next turn to the question raised by the cross-appeal: whether SIU and Illinois can rely upon a defense of laches to Cannon's claim under 42 U.S.C. § 1983.[7] In his order of June 15, 1982, Judge Robson held that SIU and Illinois could not assert a defense of laches. The applicable statute of limitations did not bar the claim. The judge stated that because Section 1983 provides for both legal and equitable remedies, the state statute of limitations applicable to a claim for damages under Section 1983 also controls the equitable aspect of the claim. In support, Judge Robson relied primarily on *Cope v. Anderson,* 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947), and *Russell v. Todd,* 309 U.S. 280, 60 S.Ct. 527, 84 L.Ed. 754 (1940).

■ The question whether laches governs a Section 1983 action in which legal relief is foreclosed by the Eleventh Amendment bar is a question of first impression in this court. We are also unaware of any precedent in other courts addressing this precise issue. We begin with an analysis of the

---

6. Illinois and SIU urge that such amendment would not be permissible because the statute of limitations has run. *See Wood v. Worachek,* 618 F.2d 1225, 1230 (7th Cir.1980). We need not decide this question because of our disposition regarding the Eleventh Amendment immunity issue.

7. Cross-appeal was the procedure utilized to present to this Court the laches claim although presumably it could have been advanced as an alternative basis for affirming the district court's grant of summary judgment in favor of Illinois and SIU against Cannon.

two Supreme Court cases upon which Judge Robson principally relied.

Putting aside for the moment the impact of the Eleventh Amendment, it is important to recognize that both *Russell* and *Cope* state only that, in cases of concurrent jurisdiction, the doctrine of laches cannot be applied so as to permit relief when the statute of limitations applicable to the analogous legal claim has run. *Russell v. Todd,* 309 U.S. 280, 289, 60 S.Ct. 527, 532, 84 L.Ed. 754 (1940) ("when the jurisdiction of the federal court is concurrent with that at law, or the suit is brought in aid of a legal right, *equity will withhold its remedy if the legal right is barred by the local statute of limitations"* (emphasis added)); *Cope v. Anderson,* 331 U.S. 461, 464, 67 S.Ct. 1340, 1341, 91 L.Ed. 1602 (1947) ("[a]nd equity will withhold its relief in such a case where the applicable statute of limitations would bar the concurrent legal remedy"). *Accord, Nilsen v. City of Moss Point,* 674 F.2d 379 (5th Cir.1982), *reheard en banc,* 701 F.2d 556 (5th Cir.1983).[8] The Supreme Court's concern therefore was that laches not be used to *extend* the applicable time limit in a case of concurrent jurisdiction. Neither *Cope* nor *Russell* forecloses the argument that laches may *shorten* the applicable time limit and, therefore, neither *Cope* nor *Russell* precludes reliance by SIU and Illinois on laches in the instant case.

Similarly, the relevant precedent in this circuit does not foreclose the applicability of laches to the present case. In *Morgan v. Koch,* 419 F.2d 993 (7th Cir.1969), the plaintiff had abandoned her equitable claims for rescission and sought only damages in a securities fraud case. The district court had granted the defendants' motion to dismiss on the basis of laches. On appeal, this court held that when a litigant seeks to enforce federal and state rights in law only, the statute of limitations controls. *Id.* at 996. In dictum, the court stated that, under *Cope* and *Russell,* the doctrine of laches would be inapplicable even if the plaintiff Morgan "were still alternatively seeking equitable relief." *Id.* Nonetheless, the decision of the district court was affirmed because the statute of limitations had run and the court held that Morgan's lack of diligence failed to warrant tolling of the statute.

In *Baker v. F & F Investment,* 420 F.2d 1191 (7th Cir.1970), the plaintiffs sought damages as well as equitable relief pursuant to 42 U.S.C. § 1982. The district court held, *inter alia,* that the applicable statute of limitations precluded recovery by some members of the plaintiff class. On appeal, the plaintiffs urged that laches rather than the statute of limitations governed. The court rejected that argument, relying on *Morgan.* 420 F.2d at 1193.

The holdings of *Morgan* and *Baker* do not foreclose reliance on laches in the present case. *Morgan* supports the familiar rule

8. Cannon urges that any reliance whatsoever on the *Nilsen* case is misplaced. We disagree with Cannon's argument that the panel's interpretation of *Cope* and *Russell* is dictum. The panel's interpretation of those two cases was an essential step in reaching the holding that the plaintiff was not collaterally estopped from litigating whether the equitable portion of her Section 1983 claim was barred by laches. Similarly, we reject Cannon's contention that the Fifth Circuit panel's analysis of the two Supreme Court cases is in conflict with other circuits. The panel opinion carefully distinguishes those cases that Cannon now urges as in conflict with the Fifth Circuit panel opinion. *See* 674 F.2d at 387.

We do note, however, that *Nilsen* was reheard *en banc. Nilsen v. City of Moss Point,* 701 F.2d 556 (5th Cir.1983). The court, *en banc,* held that res judicata barred consideration of the action based on Section 1983. In footnote, the court expressly stated that, in light of its disposition of the appeal, it need not consider the question of laches. *Id.* at 564 n. 8. Nothing in the *en banc* opinion suggests that the Fifth Circuit disagreed with the panel's interpretation of *Cope* and *Russell* as addressing only the situation in which laches is urged as a means of *extending* the time period in which an action can be brought. Pursuant to Circuit Rule 17 of the Fifth Circuit, the panel opinion in *Nilsen* was vacated upon the granting of the rehearing *en banc.* This does not preclude our recognizing, however, a reasoned interpretation of the Fifth Circuit panel, particularly in light of the fact that our analysis of *Cope* and *Russell* is dictated by the language of those cases and, although in accord with that of the *Nilsen* panel, in no way depends upon the result reached in *Nilsen.*

that laches do not apply to an action seeking purely legal relief. The result in *Baker* is no broader than that dictated by *Cope* and *Russell*: laches cannot be relied upon so as to permit equitable relief when the statute of limitations on the analogous legal claim bars recovery.

Even if one read the dictum in *Morgan* as controlling, which we decline to do, a claim of laches in the present case is not barred. Although Cannon seeks both legal and equitable relief under Section 1983, any claim to damages is not cognizable, and it legally was not from the inception of the litigation because of the Eleventh Amendment doctrine of sovereign immunity, *see* Section II(B), *supra*. The case is therefore purely equitable in nature. Not even the *Morgan* dictum suggests that a claim of laches is inapplicable in such a situation.

Neither Supreme Court nor Seventh Circuit precedent prohibits application of the doctrine of laches to Cannon's Section 1983 claim against SIU and Illinois. The relevant Supreme Court cases govern only the situation in which laches is urged as a means of gaining relief that would be time-barred under the statute of limitations applicable to the analogous legal claim. The Seventh Circuit cases, even if the *Morgan* dictum is considered, would permit the applicability of laches to a case in which no legal remedy is sought. In this case, the Eleventh Amendment prohibits the district court from entertaining the legal claim. Because the only relief that *can* be sought is equitable, laches should apply.

## IV. APPLICATION OF LACHES

■ In order for laches to bar Cannon's claims against the five defendants, the defendants must demonstrate: "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Costello v. United States*, 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961).[9] In a case such as this, in which there is no dispute as to the material facts, the district court's decision that laches bars the action is subject to review by the abuse of discretion standard. *See EEOC v. Massey-Ferguson, Inc.*, 622 F.2d 271, 276 (7th Cir.1980).

### A. Lack of Diligence

■ The determination as to whether Cannon demonstrated a lack of diligence in filing this suit turns on whether the delay was both unreasonable and inexcusable. In *EEOC v. Massey-Ferguson, Inc.*, 622 F.2d 271, 276 (7th Cir.1980), this court upheld the district court's finding that a delay of four years, nine months between the time charges were filed with the agency and the time the complaint was filed was unreasonable. Other cases, involving the EEOC as plaintiff and delays ranging from three years, seven months to four years, ten months, have similarly resulted in a finding that the delay was unreasonable. *See EEOC v. Liberty Loan Corp.*, 584 F.2d 853 (8th Cir.1978) (delay of four years, four months); *EEOC v. Westinghouse Electric Corp.*, 450 F.Supp. 792 (E.D.Mo.1978), *aff'd in relevant part*, 592 F.2d 484 (8th Cir.1979) (delays of three years, seven months to four years, seven months); *EEOC v. American Machine & Foundry, Inc.*, 13 Fair Empl. Prac.Cas. (BNA) 1634 (M.D.Pa.1976) (delay of four years, ten months). In light of the heavy caseload carried by the EEOC, a burden that has been recognized by the Supreme Court, *see Occidental Life Insurance Co. v. EEOC*, 432 U.S. 355, 364, 370, 97 S.Ct.

9. In his Memorandum Order of June 15, 1982, Judge Robson stated: "Although laches is an affirmative defense, the length of the delay can give rise to a rebuttal presumption of laches. *Miller v. United States*, 438 F.Supp. 514, 524 (E.D.Pa.1977). The burden then shifts to the plaintiff to show that the delay was excusable, or that the defendants were not prejudiced." Despite this statement, the court below gave careful consideration, particularly in the order of October 13, 1981, to the arguments asserting prejudice that were advanced by the defendants. We find little indication that the district court resolved the prejudice question by relying on a presumption. Similarly, in evaluating this aspect of the laches defense on appeal, we do not start with a presumption in favor of the defendants but rather evaluate the arguments raised by the defendants with a view to whether the district court abused its discretion in finding that prejudice was demonstrated.

2447, 2453, 2456, 53 L.Ed.2d 402 (1977), the findings of unreasonable delay in the above-cited cases are particularly significant.

In the instant case, Cannon's delay in filing suit ranged from three years, eight months in the case of Illinois (from the date of her *second* rejection by that medical school) to nearly five years in the case of the other defendants. *Massey-Ferguson* supports the district court's holding that this was an unreasonable time delay. We next consider whether the delay was excusable.

■ Cannon's primary argument is that she could not file this suit until the question whether Title IX provided a private right of action was resolved in her suit against Chicago and Northwestern. In the patent context, where the issue of other pending litigation is frequently an issue, this court has held that "the existence of other pending litigation over the patent does not automatically excuse delay in the bringing of the suit." *Advanced Hydraulics, Inc. v. Otis Elevator Co.,* 525 F.2d 477, 480 (7th Cir. 1975), *cert. denied,* 423 U.S. 869, 96 S.Ct. 132, 46 L.Ed.2d 99.

The relief available to Cannon under 42 U.S.C. § 1983 is identical to that available under Title IX. The uncertainty as to whether Title IX provides for a private right of action, prior to the Supreme Court's holding in 1979 that it does so permit, cannot excuse Cannon's delay in filing suit against SIU and Illinois because she could have sought the same relief pursuant to Section 1983. Judge Robson also correctly rejected Cannon's assertion that she might have been subject to sanctions had she filed the present case under Title IX during the pendency of the appeal in the suit against Chicago and Northwestern. Dismissal of the complaint—and certainly any sanctions against Cannon—would have been inappropriate because the case was against different defendants and alleged causes of action under the Age Act and Section 1983 as well as the Title IX claim. Inclusion of a cause of action based on Title IX could have been justified on the ground

that Cannon sought to preserve her rights against these defendants.

■ Cannon's attempts to secure administrative resolution of her claims similarly do not excuse a delay of this length. Her administrative complaints were filed against SIU and Rush in 1975 and 1976. The lack of any agency action compelled Cannon to file a revised discrimination complaint in 1979. It should have been apparent to Cannon long before November, 1979, when this suit was filed, that no administrative resolution was imminent.

Judge Robson's determination that Cannon's delay in filing this suit was inexcusable is not erroneous. The district court was correct in concluding that a lack of diligence, the first prong of the showing required for laches, was demonstrated. *See Costello v. United States,* 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961). We next address whether the defendants demonstrated that they were prejudiced by this unreasonable and inexcusable delay.

### B. Prejudice to the Defendants

■ Turning to the second prong of the test for laches, Cannon asserts that the prejudice must be to the defendant's ability to conduct his defense. In support, Cannon cites *EEOC v. Massey-Ferguson, Inc.,* 622 F.2d 271, 275 (7th Cir.1980). The defendants differ with Cannon's narrow reading of the prejudice requirement, relying on language in *Holmberg v. Armbrecht,* 327 U.S. 392, 396, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946) (quoting *Galliher v. Cadwell,* 145 U.S. 368, 373, 12 S.Ct. 873, 875, 36 L.Ed. 738 (1892)):

Equity has acted on the principle that "laches is not like limitation, a mere matter of time, but principally a question of the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or the parties."

Although the defendants assert that they are prejudiced by Cannon's delay in filing the instant suit they do not contend on appeal that their ability to defend the action has been diminished. Determining the

kind of prejudice that must be demonstrated in the instant action is therefore a critical threshold question.

1. Scope of Prejudice.

The standard articulated in *Massey-Ferguson* is predicated on language in *Occidental Life Insurance Co. v. EEOC,* 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977), in which the Court held that neither Title VII nor state statutes of limitations set an inflexible limit for the EEOC's filing of an action after exhaustion of its conciliation efforts. *Id.* at 366, 370–71, 97 S.Ct. at 2454, 2456–57. The Court noted that the absence of inflexible time limitations should not prejudice defendants. After enumerating various procedural safeguards, the Court stated:

> It is, of course, possible that despite these procedural protections a defendant in a Title VII enforcement action might still be significantly handicapped in making his defense because of an inordinate EEOC delay in filing the action after exhausting its conciliation efforts. If such cases arise the federal courts do not lack the power to provide relief.

*Id.* at 373, 97 S.Ct. at 2458. There is no indication, however, in either the *Occidental Life* or the *Massey-Ferguson* opinion that the prejudice standard applicable to laches in a suit filed by a party other than the EEOC need be limited to the defendant's ability to present his defense.

First, the *Occidental Life* opinion did not utilize the term "laches." Instead, the Court referred generally to the power inherent in the federal courts to alleviate any prejudicial impact resulting from delay by the EEOC. 432 U.S. at 373, 97 S.Ct. at 2458. Second, the *Occidental Life* Court made no reference to, and certainly no attempt to distinguish, cases such as *Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946), in which the prejudice prong of the laches defense had been stated more broadly. These factors strong-

ly suggest that both the Supreme Court, in *Occidental Life,* and this court, in *Massey-Ferguson,* were merely articulating the rule appropriate to an action in which the EEOC is the plaintiff and that neither court intended its language to limit the availability of laches in a non-EEOC action.

This conclusion is further supported by the rationale of *Occidental Life.* The Court relied upon the unique circumstances surrounding an EEOC case: the relatively short and well defined time limits governing the plaintiff's filing of his charge with the agency, the sizeable backlog of cases handled by the EEOC, and the on-going notice to a potential defendant once the initial charge is filed with the agency. 432 U.S. at 370, 372–73, 97 S.Ct. at 2456, 2457–58. These factors together mandated flexible time limits in any case brought by the EEOC. One aspect of that flexibility is that a court's power to grant relief because of the EEOC's delay is limited to the situation in which the defendant's ability to present a defense is curtailed. These factors are absent, however, in a private action and, as a result, there is no basis for so limiting a court's equitable power to grant relief from delay.

The instant appeal is not an action filed by the EEOC, or by any administrative agency. It is a private discrimination suit. Cannon's having sought administrative action against Rush and SIU in 1975 and 1976 does not bring this case within the *Massey-Ferguson* rule. Whatever notice the two defendants might have received from administrative authorities is insignificant in light of the total lack of communication between the Office of Civil Rights and any defendant between 1976 and 1979. The "on-going communication" that characterized an EEOC action in the view of the *Occidental Life* court is completely absent in the present case. The sizeable backlog carried by the EEOC, another factor in which the *Occidental Life* [10] Court relied, is irrelevant to this action filed by Cannon.

---

**10.** The circumstances of this case suggest, in fact, that Cannon was not relying on any potential administrative remedy. She filed suit

against Northwestern and Chicago prior to or at the same time she first sought administrative action. Further, no administrative complaints

In order to prevail on a defense of laches, the defendants in this case must demonstrate some prejudicial " 'change in the condition or relations of the . . . parties.' " *Holmberg v. Armbrecht,* 327 U.S. 392, 396, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946) (quoting *Galliher v. Cadwell,* 145 U.S. 368, 373, 12 S.Ct. 873, 875, 36 L.Ed. 738 (1892)), but need not necessarily demonstrate that they are unable to conduct their defense as a result of the delay.

2. Prejudice Demonstrated by the Defendants.

■■ The prejudice asserted by the defendants is that their admissions standards have changed significantly since Cannon was first rejected. The 1977 revision of the MCAT is largely responsible for the different standards because the new test emphasizes scientific knowledge and problem-solving skills to a greater degree than did the version of the test taken by Cannon. The defendants argue that, as a result, Cannon's position vis à vis other applicants and the defendants has changed. Requiring the defendants to consider Cannon on the basis of her 1974 application would, in their view, impinge upon the defendants' right to select their own students and would operate to the prejudice of other candidates. The defendants also argue that Cannon's admission on the basis of her 1974 application would be detrimental to their policy of requiring annual reapplication by candidates who are not admitted pursuant to their first application to the medical school. The district court held that this uncontroverted showing fulfilled the prejudice prong of the laches defense. We must determine whether the district judge abused his discretion in so holding.

The interest of a medical school in selecting its student body is well established. In *Regents of the University of California v. Bakke,* 438 U.S. 265, 312, 98 S.Ct. 2733,

2759, 57 L.Ed.2d 750 (1978), Justice Powell stated:

Academic freedom, though not a specifically enumerated constitutional right, long has been viewed as a special concern of the First Amendment. The freedom of a university to make its own judgments as to education includes the selection of its student body.

On this appeal from a grant of summary judgment, we must assume that, absent enforcement of discriminatory policies by the defendants, Cannon would have been admitted to the defendant medical schools pursuant to the 1974 applications. This does not establish, however, that Cannon would be similarly competitive—or that she would receive an offer of admission—if she took the revised MCAT, reapplied to the medical schools, and was evaluated in comparison with other persons applying in the same year.[11] If Cannon were granted the relief she seeks, she would be admitted to medical school without regard to whether she is qualified in comparison with those students entering medical school at the same time as she. For a court to order such action in an area which so vitally concerns the health and well being of every human being could well be an abuse of the court's equitable power. Because medical school facilities are limited, the result might also be a denial of admission to another candidate more qualified than Cannon. These consequences impinge upon the defendants' right to select student bodies of their own choosing and are particularly serious when the purpose of the selection process is to provide training to those persons best qualified to serve society through the practice of medicine.

Cannon's assertion that such prejudice in insufficient in light of the remedy granted in *Bakke* is misplaced. Cannon relies upon the fact that the Supreme Court ordered the Medical School of the University of California at Davis to admit Bakke despite

were filed against defendants other than Rush and SIU.

11. This uncertainty, in fact, appears to be the reason Cannon continues to press for equitable

relief in the face of statements by the defendants that she would receive due—and nondiscriminatory—consideration when and if she reapplied.

the intervening revision of the MCAT. Cannon's argument overlooks the fact that laches was not asserted in *Bakke* and therefore any prejudice resulting from revision of the MCAT or other changes in the admission process at Davis was not at issue.

The district judge did not abuse his discretion in holding that the ·defendant medical schools would be prejudiced if they were required to admit Cannon on the basis of her 1974 applications.

## CONCLUSION

It is well established that a grant of summary judgment may be affirmed on any ground that finds support in the record. *Helvering v. Gowran*, 302 U.S. 238, 245–56, 58 S.Ct. 154, 157–68, 82 L.Ed. 224 (1937); *Miller v. Gateway Transportation Co.*, 616 F.2d 272, 275 n. 7 (7th Cir. 1980). Although we do not reach the question whether the district judge was correct in granting Illinois and SIU summary judgment on the ground of mootness, the summary judgment in favor of those defendants is supported by the district judge's findings, in his order of October 13, 1981, that those defendants were prejudiced by Cannon's unreasonable and inexcusable delay in bringing the present action. The determination of the identity of defendants who will have to answer the complaint of a law suit is left to the plaintiff subject only to very general limitations such as presumed good faith. The choice made by Cannon, although she could have named the present defendants in 1975, was to pursue only Chicago and Northwestern. As a result of her belated filing against the defendants named herein, years after her rejections and the institution of the same type of litigation against Chicago and Northwestern, we decline because of the doctrine of laches to rerun the sands of time back nearly a decade to the status of 1974. Consequently, having considered all arguments urged by Cannon, we hold that the summary judgments granted the defendants on the basis of laches, as well as the district court's holding that Cannon has not assert-

ed any claim for which a legal remedy is available, are affirmed.

AFFIRMED.

