**John W. FARRIES, Plaintiff,**

v.

**STANADYNE/CHICAGO
DIV., Defendant.**

**No. F 85–311.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Oct. 1, 1985.

David W. LaMont, Evansville, Ind., John M. Beams, Fort Wayne, Ind., for plaintiff.

Michael G. Cleveland, Karen Gatsis Anderson, Chicago, Ill., G. William Fishering III, Fort Wayne, Ind., for defendant.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on defendant's ("Stanadyne") Motion to Dismiss. Both parties have fully briefed the issues raised in the motion. For the following reasons, the motion to dismiss will be granted.

This action arises out of Stanadyne's failure to rehire the plaintiff ("Farries") upon Farries' discharge from military service in 1974. According to the allegations of the complaint, Farries had worked for Stanadyne from November, 1968 until July 7, 1970, when he joined the United States Air Force, although an affidavit submitted with Stanadyne's motion to dismiss indicates that Farries was fired on July 2, 1970. Farries served in the Air Force until September, 1973, and then reenlisted. He served until August, 1974, when he was discharged "under other than honorable conditions." In October, 1974, and subsequently in 1975 and 1976, Farries applied for reinstatement at Stanadyne, but was denied such reinstatement. In March, 1977, Farries' discharge was upgraded to "honorable", retroactive to his August, 1974 discharge. Farries again sought reinstatement on several occasions, but was unsuccessful each time.

Farries now sues under the Vietnam Era Veterans' Readjustment Assistance Act of 1974, 38 U.S.C. § 2021, *et seq.*, claiming that Stanadyne's refusal to reinstate him violates the Act. Farries filed this suit March 30, 1983, although his in forma pauperis petition was received by the Southern District of Indiana, Evansville Division, on September 23, 1982. Stanadyne moved to dismiss the suit on grounds of improper venue and laches. The case was transferred to this court on July 19, 1985, thereby mooting the venue issue.

Although Stanadyne denominates its motion as a motion to dismiss, it is clear that its argument relies heavily on the affidavit of Arlan G. Anderson, its Manager of Industrial Relations. Proper treatment of the motion requires the court to refer to and rely upon the Anderson affidavit as well. When matters outside the pleadings are presented to and not excluded by the court, a motion to dismiss will be converted into a motion for summary judgment. Fed. R.Civ.P. 12(b)(6).

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, summary judgment serves as a vehicle with which the court "can determine whether further exploration of the facts is necessary." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975).

In making this determination, the court must keep in mind that the entry of summary judgment terminates the litigation, or an aspect thereof, and must draw all inferences from the established or asserted facts in favor of the non-moving party. *Peoples Outfitting Co. v. General Electric Credit Corp.*, 549 F.2d 42 (7th Cir.1977). The non-moving party's reasonable allegations are to be accepted as true for purposes of summary judgment. *Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215,

1218–19 (7th Cir.1984). A party may not rest on the mere allegations of the pleadings or the bare contention that an issue of fact exists. *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). *See also Atchison, Topeka & Santa Fe Railway Co. v. United Transportation Union,* 734 F.2d 317 (7th Cir.1984); *Korf v. Ball State University,* 726 F.2d 1222 (7th Cir.1983). *See generally* C. Wright, *Law of Federal Courts,* § 99 (4th ed. 1983); 6 *Moore's Federal Practice,* § 56.15 (2d ed. 1984).

Thus, the moving party must demonstrate the absence of a genuine issue of material fact. The court views all evidence submitted in favor of the non-moving party. Even if there are some disputed facts, where the undisputed facts are the material facts involved and those facts show one party is entitled to judgment as a matter of law, summary judgment is appropriate. *Egger v. Phillips,* 710 F.2d 292, 296–97 (7th Cir.1983); *Collins v. American Optometric Assn.,* 693 F.2d 636, 639 (7th Cir.1982). Further, if the court resolves all factual disputes in favor of the non-moving party and still finds summary judgment in favor of the moving party is correct as a matter of law, then the moving party is entitled to summary judgment in his favor. *Egger,* 710 F.2d at 297. *See also Bishop v. Wood,* 426 U.S. 341, 348, 348 n. 11, 96 S.Ct. 2074, 2079, 2079 n. 11, 48 L.Ed.2d 684 (1976).

Title 38, § 2021, gives an employee who was inducted into the military the right to be reinstated in his former position or a position of like seniority, status and pay if he received certification of satisfactory completion of military service and applies for reinstatement within ninety days of discharge. If an employer fails to comply with § 2021, § 2022 allows a district court, "upon the filing of a motion, petition, or other appropriate pleading by the person entitled to the benefits of such provisions," to require the employer to comply with the statute and compensate the veteran for any wages or benefits lost because of the employer's unlawful actions.

Stanadyne argues that Farries' claim under § 2021 is barred by laches because Farries waited almost nine years from the date of his discharge, and six years from the date of his honorable discharge, to file his lawsuit. The Seventh Circuit's opinion in *Lingenfelter v. Keystone Consolidated Industries, Inc.,* 691 F.2d 339 (7th Cir. 1982), is direct precedent on the issue of laches under § 2021. In *Lingenfelter,* a veteran was denied reinstatement in 1971, was informed that the United States Justice Department would not prosecute his claim in 1974, but waited until 1980 to file his lawsuit. The Seventh Circuit affirmed the district court's finding that the claim was barred by laches.

■ According to *Lingenfelter,* "[l]aches is principally a question of the inequity of permitting a claim to be enforced ... laches is based on changes of conditions or relationships involved with the claim." *Id.* at 340. To accurately measure whether the conditions or relationships have changed, a two-pronged test is used. The defendant must show (1) a lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the defending party. *Id.*

Under the first prong of the test, the plaintiff bears the burden of explaining its delay in bringing the suit. *Id.; Baker Manufacturing Co. v. Whitewater Manufacturing Co.,* 430 F.2d 1008, 1011–15 (7th Cir.1970). Farries left the Air Force in 1974, but did not begin pursuing his § 2021 rights until sometime after March, 1977, when his discharge was upgraded to "honorable." On December 6, 1978, the Department of Labor issued a letter notifying Stanadyne of Farries' claim. From December, 1978 until June, 1980, the claim was investigated by the Department and negotiations of some kind occurred among Stanadyne, Farries and the government. In June, 1980, Stanadyne's contact with the government ceased, but Farries did not file any court proceedings until September, 1982.

Farries does not attempt to offer an explanation for the delay from 1974 until 1978, when the Department of Labor became involved in investigating the claim. The only conceivable explanation is that Farries had to wait until his discharge was "honorable" before he could invoke § 2021. It is true that § 2021(a) requires that a veteran "receive a certificate described in section 9(a) of the Military Selective Service Act (relating to the satisfactory completion of military service)...." Yet there is nothing to suggest that Farries even went so far as to run up against this provision of § 2021. He did not try to file a § 2022 action against Stanadyne, only to be told that he could not proceed until he had an honorable discharge. Other than repeatedly asking Stanadyne for reinstatement, Farries did nothing to pursue his claim for four years.

Further, even if Farries was waiting for the upgrade of his discharge, Stanadyne had nearly four years of inaction by Farries with which to assess its situation. During those four years, Stanadyne paid an employee to do the work which Farries might have done if he had filed suit within those four years and won. From Stanadyne's perspective, Farries had long since been terminated and was apparently going to press no claim against Stanadyne (as the past four years had indicated).

Once the Department of Labor was informed of the claim, a period of about one and a half to nearly two years of government investigation ensued. The role of delay caused by government investigation of a veteran's claim has received judicial attention in the past.

Under the Act itself, the Secretary of Labor "shall render aid in the replacement in their former positions or reemployment of persons who have satisfactorily completed any period of active duty in the Armed Forces...." 38 U.S.C. § 2025. Despite this statutory mandate to "render aid", the delay caused by such government involvement in reinstatement of veterans has not been viewed kindly by courts confronted with a laches defense. Prior to 1974, courts generally held that the delay caused by government investigations was chargeable to the veteran, so that statutes of limitations were not tolled. *See Bell v. Aerodex, Inc.*, 473 F.2d 869, 873 (5th Cir.1973); *Blair v. Page Aircraft Maintenance, Inc.*, 467 F.2d 815, 819 (5th Cir.1972); *Leonick v. Jones & Laughlin Steel Corp.*, 151 F.Supp. 795 (E.D.N.Y.1957), *aff'd*, 258 F.2d 48 (2d Cir.1958). *But see Muscianese v. U.S. Steel Corp.*, 354 F.Supp. 1394, 1400 n. 1 (E.D.Pa.1973). In 1974, § 2022 was amended to make clear that actions under the Act are equitable in nature, and state statutes of limitations should not be applied in § 2022 proceedings. In discussing the amendment concerning state statutes of limitations, the Senate Report of the Committee on Veterans' Affairs also stated:

> Furthermore, the holdings in *Blair* ... and *Bell* ... that the time spent by the governmental agencies charged with the administration and enforcement of this Act in investigation, negotiation, and preparation for suit shall be charged against the veteran in any consideration of a time-barred defense, again misconstrue and misapply congressional intent.

S.Rep. No. 93–907, 93d Cong., 2d Sess. at 111–12.

Subsequent courts have nevertheless continued to hold that governmental delay did not excuse a veteran's delay. The Eighth Circuit, in *Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800 (8th Cir.1979), after referring to the Senate Committee report, stated:

> However, the magnitude of the burden placed on the veteran will not always outweigh the injustice that would accrue to the defendant if the suit were allowed to proceed. The prosecution of stale claims is certainly not a satisfactory norm. Claims should be closely scrutinized and the doctrine of laches is applicable to appropriate factual situations.

*Id.* at 807. *See also Churma v. United States Steel Corp.*, 514 F.2d 589, 593 (3d Cir.1975). The *Goodman* court specifically pointed out that the veterans in that case chose to rely on the services of the Depart-

ment instead of hiring private counsel. 606 F.2d at 807.

■ The court finds that this is an "appropriate factual situation" within which delay by the Department of Labor should not be excused. Farries left the Air Force in 1974, but did not contact the government until 1978. While this delay may be attributed in part to the fact that Farries' discharge was not considered "honorable" until 1977, from the perspective of Stanadyne this was four years in which nothing (other than Farries' attempts to seek reinstatement) occurred. The government investigation then took an additional two years to complete, so that six years had passed by the time the claim was back where it started—in Farries' hands. In effect, Farries did nothing for four years, and then attempted to place responsibility for the claim in the hands of the Department of Labor. Meanwhile, Stanadyne suffered the prejudicial effect of the loss of evidence and monetary damages described below. The inexcusability of a delay is closely intertwined with the prejudice caused by the delay, *Goodman*, 606 F.2d at 807. Stanadyne's prejudice is, as explained below, quite substantial, and under the *Goodman* rationale outweighs the burden on Farries, especially in light of the fact that the extensive delay in this case is mostly attributable to Farries. The court concludes that the delay from 1974 to 1978 is inexcusable, and the delay from December, 1978 to June, 1980 caused by the Department of Labor investigation is, under *Goodman*, inexcusable as well.

Farries attempts to explain the delay from June, 1980 to September, 1982 by stating that he spent that time looking for a lawyer to handle his case. Farries does not explain why he was unsuccessful; the fact that he ultimately filed an in forma pauperis petition and had counsel appointed by the court proves that Farries could have obtained counsel by filing suit expeditiously. Thus, Farries cannot claim that his indigency prevented him from obtaining counsel and filing suit, as "[a] plaintiff cannot justify his lack of diligence in prosecuting litigation simply by declaring that

he is poor," *Organizations United for Ecology v. Bell*, 446 F.Supp. 535, 550 (M.D. Pa.1978). This is especially true here, for § 2022 specifically allows a veteran to commence an action without having fees or costs taxed against him. Once Farries filed his lawsuit, the court quickly appointed counsel for him. The failure to find counsel to handle a case is therefore not a valid excuse for an over two-year delay in filing suit.

The court therefore finds that Farries' over eight-year delay from the date of his discharge until the filing of the lawsuit is inexcusable, thereby satisfying the first prong of the laches test under *Lingenfelter*.

■ The second prong of the test involves prejudice to the defendant caused by the delay. Stanadyne lists two forms of prejudice: loss of evidence and monetary damages. The loss of evidence relates to the fact that the Manager of Industrial Relations at the time of Farries' application for reinstatement, Wilson O. Given, died in May, 1980. According to the Anderson affidavit, which is undisputed by Farries, Given had several conversations with Farries at the time of the application, and Given was the only Stanadyne employee with knowledge of what occurred in those conversations. By failing to file suit until 1982, Stanadyne argues, Farries deprived Stanadyne of important evidence for its defense because the testimony of Given is lost forever. Farries argues that the Department of Labor investigation should have put Stanadyne on notice of a possible claim in 1978, thus giving it plenty of time to preserve its evidence, and also that Given's death occurred before the completion of the investigation, so that Stanadyne would not have had the benefit of Given's testimony anyway.

Neither excuse offered by Farries is sufficient to avoid the conclusion that Stanadyne was prejudiced by Farries' delay. In *Lingenfelter*, the Seventh Circuit found that the fading of key witnesses' memories during the nine year delay before filing

suit was a proper ground for a finding of prejudice to the defendant. This case presents a worse scenario—not only is the witness' memory gone, but the witness is unavailable as well. Part of Stanadyne's defense rests upon the fact that Farries was fired from his job prior to his original enlistment, and that certain representations were made to him upon his attempt to return to work. Only Given could testify as to what was told Farries upon his application for reinstatement, and the unavailability of his testimony deals a serious blow to Stanadyne's defense. Stanadyne cannot reasonably be expected to have had the foresight to preserve Given's testimony prior to his death, especially in light of the fact that Farries had filed no action against it. Not all potential claims against a company blossom into a lawsuit. It would place a terrible burden on a company to preserve evidence for claims that may never be raised or that are raised only after eight years of inaction on the part of the potential plaintiff.

Farries' second argument—that Given's testimony would not have been available to Stanadyne anyway—presumes that the delay in waiting for the Department of Labor investigation to be completed was justified, a presumption which the court specifically rejects above. The court therefore finds that the loss of Given's testimony is a prejudice to Stanadyne specifically caused by Farries. If suit had been filed promptly, a deposition could have preserved testimony that is now irretrievably lost.

Stanadyne's second prejudice relates to monetary damages it has suffered because of the delay. Specifically, Stanadyne alleges that it had to pay another employee to do the work that Farries might have done had he expeditiously filed suit and won. To pay Farries now for back wages, after having paid another employee for those eight years, would force Stanadyne to pay twice for the same labor, and to pay an amount which was made substantially larger by Farries' delay in filing suit. The *Lingenfelter* court specifically found that pecuniary losses in the form of wages paid to other employees can be considered as elements of prejudice in a laches defense. Farries' delay caused Stanadyne to pay wages for six years before discovering that it may have to pay six additional years of wages. Prejudice can be found both in the increase in Farries' claim size caused by the delay, and in the benefits awarded other employees that would not have been awarded if Farries had diligently pursued his remedies and been reinstated long ago.

The court therefore finds that Stanadyne has been substantially prejudiced by Farries' delay, and thus the second prong of the *Lingenfelter* laches test is satisfied here as well.[1]

 This case is closer than the case in *Lingenfelter*, primarily because the delay involved is shorter, and the Department of Labor investigation intervenes in the middle of the period of delay. Yet the principles of *Lingenfelter* require this result. The prejudice to Stanadyne caused by Farries' delay is much greater than the prejudice in *Lingenfelter*, and this prejudice is directly traceable to Farries' failure to pursue his remedies expeditiously. Despite the closeness of the case, the court concludes that laches must apply. Because Farries has raised no issues which would amount to a material issue of fact in this case, and Stanadyne is entitled to a judgment as a matter of law on the basis of laches, the court will grant Stanadyne summary judgment in this case.

### Conclusion

For the reasons stated above, defendant's Motion to Dismiss, converted into a

---

**1.** In addition to laches, Farries' case would have a second serious legal hurdle to overcome. According to the Anderson affidavit, Stanadyne personnel records show that Farries was terminated on July 2, 1970, which would be five days before the complaint alleges Farries joined the Air Force. Section 2021 requires that the veter- an "leave[ ] a position ... in the employ of any employer in order to perform such [military] training and service." If Farries had been fired prior to his induction into the Air Force, then he would fail to meet the criteria of § 2021, and thus not be entitled to press a claim under that section.

motion for summary judgment, is hereby GRANTED.