**John W. FARRIES, Plaintiff–Appellant,**

v.

**STANADYNE/CHICAGO DIVISION,
Defendant–Appellee.**

No. 85–2921.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 14, 1987.

Decided Sept. 22, 1987.

As Amended Sept. 24, 1987.

Richard J. O'Brien, Sidley & Austin, Chicago, Ill., for plaintiff-appellant.

Michael G. Cleveland, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendant-appellee.

Before WOOD, COFFEY, and MANION, Circuit Judges.

COFFEY, Circuit Judge.

The plaintiff-appellant John W. Farries appeals the district court's grant of summary judgment in favor of the defendant-appellee Stanadyne.  We affirm.

I

According to the appellant's (John W. Farries') allegations in his complaint, he was employed as a laborer and "washer grader operator" with Stanadyne from November, 1968 until July 7, 1970, when he left Stanadyne to join the United States Air Force.[1]  Stanadyne, on the other hand, submitted an affidavit stating that Farries worked for Stanadyne "until July 2, 1970, when he was terminated for failing to re-

---

1. We note that while Farries' complaint states he "was continuously in defendant's employ until the 7th day of July, 1970," he broadly states in his brief that he "[w]as employed by Defendant ... until July 1970" and that he "[l]eft his employment with Defendant in July 1970...."

port to work."[2] Farries served in the United States Air Force until September 20, 1973, reenlisted, and then served until August 6, 1974.[3] In October 1974[4] and several times subsequently, Farries applied for reinstatement as a "washer grader operator" at Stanadyne but was denied. According to the Anderson affidavit Farries was denied reinstatement because:

"Review of Company records shows that when Mr. Farries sought to return to employment with Stanadyne following military service, he was not rehired because of his past employment record, including the circumstances of his termination, and a provision of the then applicable collective bargaining agreement."

On March 23, 1977, the plaintiff's discharge from the United States Air Force was upgraded to "honorable" retroactive to August 6, 1974. He sought reinstatement with the appellee but was again denied. Wilson Given, who was Manager of Industrial Relations for Stanadyne in the late 1970s had several conversations with Farries when the appellant sought reinstatement with Stanadyne. According to the Anderson affidavit submitted by Stanadyne, "Mr. Given was the only employee of Stanadyne with knowledge of what occurred in those conversations." Given died on May 9, 1980.

Shortly after the March 23, 1977, upgrading of Farries' discharge from the Air Force, he was denied reinstatement with Stanadyne. At this time he requested the United States Department of Labor investigate his claim of unlawful refusal of reinstatement to his prior employment.[5] On December 6, 1978, the United States Department of Labor notified Stanadyne of Farries' claim and until June 19, 1980, Stanadyne continued discussions and correspondence with representatives of the Department of Labor and Farries concerning

2. Affidavit of Arlan Anderson, Manager, Industrial Relations of Stanadyne/Chicago Division.

3. Farries was originally discharged from the Air Force on August 6, 1974, "under other than honorable conditions." On March 23, 1977, his discharge from the Air Force was upgraded to "honorable" retroactive to August 5, 1974.

4. Title 38, § 2021, the Vietnam Era Veterans' Readjustment Assistance Act of 1974, provides that any employee inducted into the military has the right of reinstatement in his former position or a position of like seniority status or pay if he (1) received a certification of satisfactory completion of military service and (2) applies for reinstatement within ninety days of discharge. Section 2021 provides in relevant part:

"(a) In the case of any person who is inducted into the Armed Forces of the United States under the Military Selective Service Act (or under any prior or subsequent corresponding law) for training and service and who leaves a position (other than a temporary position) in the employ of any employer in order to perform such training and service, and (1) receives a certificate described in section 9(a) of the Military Selective Service Act (relating to the satisfactory completion of military service), and (2) makes application for reemployment within ninety days after such person is relieved from such training and service or from hospitalization continuing after discharge for a period of not more than one year—

\* \* \*

(B) if such position was in the employ of a State, or political subdivision thereof, or a private employer, such person shall—

(i) if still qualified to perform the duties of such position, be restored by such employer or the employer's successor in interest to such position or to a position of like seniority, status, and pay; or

(ii) if not qualified to perform the duties of such position, by reason of disability sustained during such service, but qualified to perform the duties of any other position in the employ of such employer or the employer's successor in interest, be offered employment and, if such person so requests, be employed by such employer or the employer's successor in interest in such other position the duties of which such person is qualified to perform as will provide such person like seniority, status, and pay, or the nearest approximation thereof consistent with the circumstances in such person's case.

unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so. Nothing in this chapter shall excuse noncompliance with any statute or ordinance of a State or political subdivision thereof establishing greater or additional rights or protections than the rights and protections established pursuant to this chapter."

5. The district court in a memorandum opinion stated:

"The plaintiff, Mr. Farries, was employed by the defendant, Stanadyne, Inc. from November 11, 1968 until July 14, 1970, first as a Departmental Laborer and later as a Washer Grader operator. Mr. Farries was terminated on July 14, 1970 for failure to report to work. His last day worked was July 2, 1970. Mr. Farries states that he enlisted in the Air Force

Farries' claim. In June of 1980, the Department of Labor informed the appellant that its investigation of his claim was concluded without a determination of fact and advised him of his right to pursue his claim in court.

Farries states he attempted from June 1980 until September 1982, without success, to employ counsel to pursue his claim against Stanadyne for unlawful denial of reinstatement. On September 23, 1982, the appellant filed an affidavit of financial status and pauper affidavit seeking the appointment of counsel in the United States District Court for the Southern District of Indiana, and on October 18, 1982, the district judge appointed counsel to represent Farries.

On March 30, 1983, Farries filed an action alleging that he had been unlawfully denied reinstatement pursuant to 38 U.S.C. § 2021. On June 20, 1983, Stanadyne made a motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure on grounds of improper venue and laches. Attached to the motion was the affidavit of Arlan Anderson, Stanadyne's Manager of Industrial Relations. On July 19, 1985, the trial judge, after finding improper venue in the Southern District of Indiana, transferred the case to the United States District Court for the Northern District of Indiana.

On September 10, 1985, the district court entered a pretrial conference order stating:

"There is presently pending a motion to dismiss filed by defendant, which the parties agree is now fully briefed. The court will consider the rule on this motion within thirty (30) days from the date of this order. In the event the motion is denied, discovery shall then proceed and discovery shall terminate in this cause on January 10, 1986. A final pre-trial conference will be held in this cause on February 13, 1986, at 1:15 p.m. This cause is set for trial on March 17, 1986, at 10:00 a.m."

in May, 1970, receiving an active duty date for July, 1970. Official records show an enlistment date of September 10, 1970 and Mr. Farries entered upon active duty that day." *Farries v. Stanadyne,* No. EV 83–75–C Mem.Op.

On October 1, 1985, without giving notice to the parties the district court converted Stanadyne's motion to dismiss into one for summary judgment stating:

"Although Stanadyne denominates its motion as a motion to dismiss, it is clear that its argument relies heavily on the affidavit of Arlan G. Anderson, its Manager of Industrial Relations. Proper treatment of the motion requires the court to refer to and rely upon the Anderson affidavit as well. When matters outside the pleadings are presented to and not excluded by the court, a motion to dismiss will be converted into a motion for summary judgment. Fed.R. Civ.P. 12(b)(6)."

*Farries v. Stanadyne,* 618 F.Supp. 1324, 1325 (N.D.Ind.1985).

Relying on our decision in *Lingenfelter v. Keystone Consolidated Industries,* 691 F.2d 339 (7th Cir.1982) the trial judge found that Farries' claim was barred by laches finding that each of the two elements set forth in our decision in *Lingenfelter* necessary to support a finding of laches were present: (1) a lack of diligence on the part of Farries in pursuing his claim and (2) Stanadyne suffered prejudice as a result of Farries' lack of diligence. As to Farries' lack of diligence in pursuing his claim, the district judge found that Farries "over eight year delay" was "inexcusable" and thus the first prong of the laches test under *Lingenfelter* was satisfied. Regarding the second factor necessary for laches, prejudice to Stanadyne as a result of Farries' lack of diligence, the trial judge found that Farries' delay in filing his claim prejudiced Stanadyne in that (1) it deprived Stanadyne of the deceased Given's testimony and any evidence he might provide since he expired in 1980 and (2) if Stanadyne were now required to reimburse Farries for lost wages, after having paid another employee for eight years, it would have to pay twice for the same labor caused by Farries' delay in bringing the suit. The court concluded

(S.D.Ind. July 19, 1985) (Finding venue improper in the Southern District of Indiana). It is unclear from the record how the district court arrived at the July 14, 1970, date as Farries' last day with Stanadyne.

that Farries "raised no issues which would amount to a material issue of fact" and granted Stanadyne summary judgment.

On appeal Farries makes two arguments: (1) the trial judge erred in failing to give him notice before converting Stanadyne's 12(b) motion into one for summary judgment and (2) the court improperly applied the doctrine of laches to his claim.

## II

Initially, Farries argues the trial judge erred in failing to give notice before converting Stanadyne's 12(b)(6) motion, Fed.R. Civ.P., into a motion for summary judgment under Rule 56(c). In converting Stanadyne's motion to dismiss into a summary judgment the district judge stated: "Proper treatment of [this motion to dismiss] requires the court to refer to and rely upon the Anderson affidavit as well. When matters outside the pleadings are presented to and not excluded by the court, a motion to dismiss will be converted into a motion for summary judgment." *Farries,* 618 F.Supp. at 1325.

Rule 12(b) provides that:
"If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."
The Advisory Committee Notes on Rule 12(b) amplify the text of the rule:
"The addition at the end of subdivision (b) makes it clear that on a motion under Rule 12(b)(6) extraneous material may not be considered if the court excludes it, but that if the court does not exclude such material the motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56. It will also be observed that if a motion under Rule 12(b)(6) is thus converted into a summary judgment motion, the amendment insures that both parties shall be

given a reasonable opportunity to submit affidavits and extraneous proofs to avoid taking a party by surprise through the conversion of the motion into a motion for summary judgment."
*See also* Wright & Miller, Federal Practice & Procedure § 1366.

On a number of occasions we have been presented with a situation where a district court has converted a Rule 12(b)(6) motion into one for summary judgment without giving the parties notice. *See Malak v. Associated Physicians, Inc.,* 784 F.2d 277, 280–81 (7th Cir.1986); *Milwaukee Typo, Etc. v. Newspapers, Inc.,* 639 F.2d 386, 391 (7th Cir.), *cert. denied,* 454 U.S. 838, 102 S.Ct. 144, 70 L.Ed.2d 119 (1981); *Chicago–Midwest Meat Assoc. v. City of Evanston,* 589 F.2d 278, 281–82 (7th Cir.1978), *cert. denied,* 442 U.S. 946, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979). In *Milwaukee Typo* we stated "while ... the conversion of a 12(b)(6) motion into a summary judgment motion should be accompanied by prior notice and 'a reasonable opportunity to establish the existence of material controverted facts,' the failure to afford such procedure does not necessarily mandate reversal." 639 F.2d at 391 (quoting *Chicago–Midwest Meat,* 589 F.2d at 282). In *Malak* we noted that "[a]lthough a district court certainly should give notice to the parties when the court converts a 12(b)(6) motion into a motion for summary judgment, the failure to do so does not necessarily mandate reversal where nothing else could have been raised to alter the entry of summary judgment." 784 F.2d at 281.

■ Our decision in *Milwaukee Typo* makes clear that a potentially disputed material issue of fact must exist to justify reversal of a trial judge's decision to convert a motion to dismiss into a summary judgment where he fails to give the parties notice of his intention to convert the motion:
"Where the record discloses the existence of unresolved material fact issues, or where the parties represent that they would have submitted specific controverted material factual issues to the trial

court if they had been given the opportunity, we would have to find that summary judgment was inappropriate.... *But where no potential disputed material issue of fact exists, a summary judgment will not be disturbed even though the district court disregarded the procedure which should have been followed.*" 639 F.2d at 391 (citations omitted) (emphasis added).

In order to decide whether the trial judge committed reversible error in converting Stanadyne's 12(b)(6) motion into one for summary judgment without giving notice of the same, we must determine whether he granted summary judgment to Stanadyne on the basis of laches despite the fact there were unresolved fact issues in the record or that Farries could have submitted "specific controverted material factual issues to the trial court" if he had been given the opportunity. *Milwaukee Typo*, 639 F.2d at 391. We emphasize that if "[n]o potential disputed material fact exists, a summary judgment will not be disturbed even though the district court disregarded the procedure which should have been followed." *Id.*

The Federal Rules of Civil Procedure provide that a grant of summary judgment is proper when "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "The primary purpose of a grant of summary judgment is to avoid unnecessary trials when there is no genuine issue of material fact in dispute." *Wainwright Bank & Trust Co. v. Railroadmens Federal Savings & Loan Association of Indianapolis*, 806 F.2d 146, 149 (7th Cir.1986). Since Stanadyne is the moving party it has the "[b]urden of showing that there was no genuine issue as to any material fact." *Equal Employment Opportunity Commission v. Massey–Ferguson*, 622 F.2d 271, 276 (7th Cir.1980); *see also Wilmes v. United States Postal Service*, 810 F.2d 130, 133 (7th Cir.1987). A grant of "[s]ummary judgment will not lie

if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.) (en banc), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). It is well-established that "[i]n reviewing a grant of summary judgment, an appellate court must view the record and the inferences drawn therefrom in the light most favorable to the party opposing the motion." *Illinois v. Bowen*, 808 F.2d 571, 573–74 (7th Cir.1986).[6]

### III

Farries argues that the trial judge improperly found that the doctrine of laches served to bar his claim under 38 U.S.C. § 2021 since the record fails to establish that either he was dilatory in pursuing his claim or Stanadyne suffered prejudice from his delay. We have stated: "Laches is principally a question of the inequity of permitting a claim to be enforced. It is unlike [a statute of] limitation[s], which is based merely on time. Rather, laches is based upon changes of conditions or relationships involved with the claim." *Lingenfelter v. Keystone Consolidated, Inc.*, 691 F.2d 339, 340 (7th Cir.1982) (emphasis added); *see also Costello v. United States*, 365 U.S. 265, 282–83, 81 S.Ct. 534, 543–44, 5 L.Ed.2d 551 (1961). The Supreme Court has stated that the doctrine of laches is intended to be flexible, emphasizing "[t]hat no arbitrary or fixed period of time has been, or will be, established as an inflexible rule, but that the delay which will defeat such a suit must in every case depend on the peculiar equitable circumstances of that case." *The Key City*, 81 U.S. (14 Wall.) 653, 660, 20 L.Ed. 896 (1871). The two elements the defendant must prove to support a finding of laches are well-established: "(1) lack of diligence by the party against whom the defense is asserted, and

---

**6.** Since the findings of delay and prejudice required for laches were made in the context of a summary judgment "the 'clearly erroneous' standard is not an appropriate standard of review." *Equal Employment Opportunity Commission v. Massey–Ferguson, Inc.*, 622 F.2d 271, 276 (7th Cir.1980).

(2) prejudice to the party asserting the defense." *Costello*, 365 U.S. at 282, 81 S.Ct. at 543.

#### a. *Lack of diligence by Farries*

■ Stanadyne asserts that approximately eight years passed from the time Farries was discharged from the military in August 1974 until he filed his in forma pauperis affidavit in September of 1982. In response, the appellant essentially argues that the period from August 1974 until March 1977 (approximately 2½ years) should not be included in our analysis of this prong since he was waiting for his discharge to be upgraded to honorable in order to be able to pursue his claim under 38 U.S.C. § 2021. Farries also claims that the period from March 1977 to June 1980 should not be "chargeable" as a delay in his filing his case since the Department of Labor was investigating his potential claim during that time.

Farries claims that upon being denied reinstatement in March 1977 when his discharge was upgraded to honorable he immediately sought assistance from the Department of Labor in pursuing a possible claim against Stanadyne based on Stanadyne's unlawful refusal to reinstate him. Farries asserts, and Stanadyne admits that between December 6, 1978, and June 19, 1980, that Stanadyne had various discussions and corresponded with representatives of the Department of Labor and Farries concerning the claim. The appellant

argues that Congress, in amending 38 U.S.C. § 2022[7] in 1974 to make clear that actions under the Vietnam Era Veterans' Readjustment Assistance Act were equitable in nature and that state statutes of limitations are not to be applied to such claims, intended that the delay caused by government investigations should not be charged to the veteran. A part of the legislative history to the amendment provided:

"There is also added a provision at the end of this section which reaffirms and reflects more clearly the congressional intent that legal proceedings under this chapter shall be governed by equity principles of law, specifically by barring the application of State statutes of limitations to any such proceeding. Congress, in 1940, omitted any reference to the application of any time-barred defense in cases arising under this law, in part to insure the application of a policy of keeping enforcement rights available to returned veterans as uniform as possible throughout the country. The equity doctrine of laches accomplishes the purpose as nearly as possible.

Therefore, those court decisions which have either applied a State statute of limitations to completely bar a claim under the prior law (see e.g. *Blair v. Page Aircraft Maintenance, Inc.*, 467 F.2d 815 (5th Cir.1972) (Alabama 1–year statute of limitations); *Bell v. Aerodex, Inc.*,

---

**7.** Title 38, U.S.C. § 2022 provides:

"If any employer, who is a private employer of a State or political subdivision thereof, fails or refuses to comply with the provisions of section 2021(a), (b)(1), or (b)(3), or 2024 of this title, the district court of the United States for any district in which such private employer maintains a place of business, or in which such State or political subdivision thereof exercises authority or carries out its functions, shall have the power, upon the filing of a motion, petition, or other appropriate pleading by the person entitled to the benefits of such provisions, specifically to require such employer to comply with such provisions and to compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action. Any such compensation shall be in addition to and shall not be deemed to diminish any of the benefits provided for in such provisions. Upon application to the United States attorney or compa-

rable official for any district in which such private employer maintains a place of business, or in which such State or political subdivision thereof exercises authority or carries out its functions, by any person claiming to be entitled to the benefits provided for in such provisions, such United States attorney or official, if reasonably satisfied that the person so applying is entitled to such benefits, shall appear and act as attorney for such person in the amicable adjustment of the claim or in the filing of any motion, petition, or other appropriate pleading and the prosecution thereof specifically to require such employer to comply with such provisions. No fees or court costs shall be taxed against any person who may apply for such benefits. In any such action only the employer shall be deemed a necessary party respondent. No State statute of limitations shall apply to any proceedings under this chapter."

473 F.2d 869 (5th Cir.1973) (Florida 1 year statute of limitations) or have applied a State statute of limitations to partially bar a claim under the prior law (see e.g. *Gruca v. United States Steel Corp.*, 495 F.2d 1252 (3d Cir.1974); *Smith v. Continental Airlines, Inc.*, 70 CCH Labor Cases 13,501 (D.C.Calif. 1973)) are not in accord with the intent of Congress as to the application of time-barred defenses.

Furthermore, the holdings in *Blair, supra*, that the time spent by the governmental agencies charged with the administration and enforcement of this Act in investigation, negotiation, and preparation for suit shall be charged against the veteran in any consideration of a time-barred defense, again misconstrue and misapply congressional intent."

S.Rep. No. 93–906, 93d Cong., 2d Sess. at 111–12, U.S.Code Cong. & Admin.News 1974, p. 3327. Farries, in an attempt to explain a segment of the inordinate amount of time that passed before he filed this action, claims the district court misconstrued congressional intent in attributing to him the time the Department of Labor spent investigating his claim to him.

Farries' justification for the twenty-seven month period from June 1980 (when the Department of Labor advised him that their investigation was closed) until September 23, 1982 (when he filed his affidavit of financial status and pauper affidavit) is that he "attempted, without success, to employ counsel to pursue his claim against Defendant."

Stanadyne, in passing, points out that the time between Farries' discharge and the upgrading of his discharge should be included in the analysis of whether Farries lacked diligence in pursuing his claim, stating in its brief "[r]egardless of whether Plaintiff is charged with the period prior to the discharge upgrade, the record contains ample evidence of delay by Plaintiff in the many years he allowed his claim to languish." The appellee Stanadyne does argue the time the Department of Labor spent pursuing its investigation of the appellant's claim is properly chargeable to Farrie's relying on the decision in *Good-man v. McDonnell Douglas Corp.*, 606 F.2d 800 (8th Cir.1979) where the Eighth Circuit stated:

"Various considerations underlie the decision of whether time spent by the Government in processing a claim should be allowed to prejudice a plaintiff's right to sue for enforcement of federally granted rights. A committee report, which is part of the legislative history of the 1974 amendment of the veterans' reemployment rights statute, suggests that it is inappropriate to charge against the veteran the time spent by the Department of Labor. S.Rep. No. 93–907, 93rd Cong., 2d Sess. 111–12, 113 (1974) U.S. Code Cong. & Admin.News 1974, p. 6313. However, the magnitude of the burden placed upon the veteran will not always outweigh the injustice that would accrue to the defendant if the suit were allowed to proceed. The prosecution of stale claims is certainly not a satisfactory norm. Claims should be closely scrutinized and the doctrine of laches is applicable to *appropriate factual situations.*"

*Id.* at 807 (footnote omitted) (emphasis added). We agree with Stanadyne's assertion that this case presents an "appropriate factual situation" under *Goodman* since "the magnitude of the burden placed upon [Farries] will not outweigh the injustice that would accrue to [it—Stanadyne] if the suit were allowed to proceed." Stanadyne asserts the injustice rests in the fact that it (1) has forever lost the testimony and evidence of Wilson Given who expired before Farries brought his claim into court, and (2) the wages it has had to pay to another to fill Farries' job that it could have paid to him if he had filed suit expeditiously and prevailed. Stanadyne also argues that Farries' justification (looking for an attorney) for the more than two-year period after the Department of Labor closed its investigation is without merit since the appellant could have filed for the appointment of an attorney in forma pauperis at any time without having court fees or costs assessed.

There are essentially three time periods that must be separately analyzed and then in combination to determine whether the

first prong of laches, a lack of diligence on the part of Farries, has been established: (1) the time from Farries' discharge from the Air Force on less than honorable conditions in August of 1974 until it was upgraded in March of 1977, (2) the period from March 1977 until June 1980 when the Department of Labor was investigating his claim, and (3) the time period from June 1980 until September 1982 while the plaintiff was attempting to find an attorney.

As to the first period of time (August 1974 to March 1977) Farries made several visits to Stanadyne seeking reinstatement; he claims it would have been futile to have pursued a claim under 38 U.S.C. § 2021 since his discharge from the United States Air Force was "under other than honorable conditions." [8] However, it is interesting to note that his complaint alleges the defendant's unlawfully refused to reinstate him in October 1974 well before his discharge was upgraded. The district court stated and we agree that the record is bereft of any suggestion that "Farries even went so far as to run up against the provision of § 2021. He did not try to file a § 2022 action against Stanadyne, only to be told that he could not proceed until he had an honorable discharge."

Regarding the period from March 1977 to June 1980 when the Department of Labor was conducting its investigation of Farries claim, we must analyze whether this is an "appropriate factual situation" wherein the magnitude of the burden placed on Farries does not outweigh the injustice that would accrue to Stanadyne if the suit were allowed to proceed. We note that during the period of time the Department of Labor was investigating Farries' claim, Stanadyne was substantially prejudiced in at least two ways: (1) the loss of the testimony of Wilson Given who died in May of 1980 and was the only Stanadyne employee who had had discussions with Farries when the appellant was seeking reinstatement; and (2) the payment of wages to someone to perform Farries' work, wages that would have been paid to Farries if he had filed his claim in an expeditious manner and prevailed (and

thus not subject them to paying twice for the same work). We agree with the district court that Farries failed to diligently pursue his claim from August 1974 until March 1977 and now attempts to place the responsibility for the next period of time (March 1977 to June 1980) on the Department of Labor. As we have stated, we agree with the district court's finding that Stanadyne was substantially prejudiced by Farries' delay, and thus we hold that under the *Goodman* rationale, the prejudice to Stanadyne outweighs the burden on Farries, especially when considering the fact that the majority of the delay in this case is clearly attributable to one person—the plaintiff Farries.

Concerning the third period of time, June 1980 to September 1982, Farries fails to logically and realistically justify this excessive period of time other than claiming he was looking for an attorney. We agree with the district court that there was no excuse for this delay. We note that 38 U.S.C. § 2022 allows a veteran to commence an action without having fees or court costs "taxed" against him, and after Farries filed an in forma pauperis petition in the instant case, counsel was quickly appointed by the court.

Although if we were to consider each time period separately as one time period rather than in combination our conclusion might conceivably be different, we hold that when these three periods are considered, as they must be, as part of the overall eight-year lapse of time, they establish a lack of diligence on the part of Farries in failing to take any legal action against Stanadyne. We emphasize that even if the period of time Farries was waiting to have his discharge upgraded is not included in the analysis of the first prong of laches, and Stanadyne makes only a perfunctory argument that it should be included, there still exists more than ample evidence to satisfy the first prong since there were approximately six years when Farries should have pursued his claim in court.

8. Title 38, U.S.C. § 2021 requires that a veteran "receive a certificate described in section 9(a) of the Military Selective Service Act (relating to the satisfactory completion of military service) ..."

### b. *Prejudice to Stanadyne*

The second prong of the laches test requires that Stanadyne prove that it was prejudiced as a result of Farries' lack of diligence. Stanadyne argues it was prejudiced in two ways: loss of evidence and its potentially increased financial responsibility.

If Farries were allowed to proceed with his claim, Stanadyne claims they would be unable to present potential evidence and testimony of Wilson Given, Manager of Industrial Relations at the time of Farries' application for reinstatement, who expired in 1980. The Anderson affidavit sets forth that Given had several discussions with Farries when he sought reinstatement and was the only Stanadyne employee with knowledge of what occurred in those discussions.

Farries claims that Stanadyne received notice in 1978 when the Department of Labor contacted Stanadyne regarding Farries, and thus Stanadyne had ample time to preserve evidence. The appellant also argues in his brief that the substance of his communications with Given are insignificant since under the Act, the substance of those communications as pertaining to his claim for reinstatement "is of incidential, if any, importance to the merits" of his claim.

The district court correctly noted that this court has stated that the fading of key witnesses' memories during the nine-year period prior to filing suit was a proper ground for a finding of prejudice to the defendant. *Lingenfelter, supra.* The instant case has a more compelling factual situation than the fading of witnesses' memories; it involves the loss of testimony forever resulting from the death of the key witness. We therefore agree with the district court's statement on this issue:

> "This case presents a worse scenario— not only is the witness' memory gone, but the witness is unavailable as well.... Only Given could testify as to what was told Farries upon his application for reinstatement, and the unavaila-

bility of his testimony deals a serious blow to Stanadyne's defense. Stanadyne cannot reasonably be expected to have had the foresight to preserve Given's testimony prior to his death, especially in light of the fact that Farries had filed no action against it. Not all potential claims against a company blossom into a lawsuit. It would place a terrible burden on a company to preserve evidence for claims that may never be raised or that are raised only after eight years of inaction on the part of the potential plaintiff."

*Farries,* 618 F.Supp. at 1329.

Regarding Stanadyne's claim of potentially increased financial liability, Stanadyne claims that it had to pay another employee to perform the work Farries would have done had he been expeditious in filing his suit and prevailed. Stanadyne emphasizes that if Farries were to prevail in this action, the inordinate delay in his filing of his claim would make the back wages award substantially larger. Our decision in *Lingenfelter* makes clear that the payment of wages for many years to other employees who worked in place of the plaintiff can be considered as an element of prejudice to the defendant in the absence of any claim against the defendant. *Cf. United States ex rel. Arant v. Lane,* 249 U.S. 367, 39 S.Ct. 293, 63 L.Ed. 650 (1919). We hold that Stanadyne has established the second prong necessary to support a holding of laches: that it was prejudiced as a result of Farries' lack of diligence in pursuing his claim since: (1) the death of Given deprived Stanadyne of crucial evidence and testimony regarding Farries' claim and (2) Stanadyne was subjected to potential increased liability for Farries' back wages for a period of over eight years.

We hold that the district court did not commit reversible error in converting Stanadyne's 12(b)(6) motion into one for summary judgment since our review of the record and the arguments advanced convinces us there were no unresolved fact issues.[9] We emphasize that our review of

---

9. We note that Farries' claim that he was taken by surprise by the trial courts conversion of the 12(b)(6) motion into one for summary judgment is significantly weakened by the fact: (1) that he

the arguments advanced by Farries in his briefs and at oral argument fails to convince us that he could have submitted "specific controverted material factual issues to the trial court" if he had been given the opportunity. *Milwaukee Typo*, 639 F.2d at 391. We also hold that the district court properly found the elements of laches were present in the instant case: (1) a lack of diligence on Farries' part in pursuing his claim and (2) resulting prejudice to Stanadyne.

## IV

As the district court noted, 618 F.Supp. at 1329 n. 1, and we agree, Farries might be statutorily barred from pursuing his 38 U.S.C. § 2021 claim. Although Farries claims he left Stanadyne's employ on July 7, 1970, according to the Anderson affidavit, Farries was *terminated* on July 2, 1970, which would be five days prior to when Farries claims he stopped working at Stanadyne to join the Air Force. Section 2021 requires that the veteran "leave[ ] a position ... in the employ of any employer in order to perform such [military] training and service." We agree with the district court's statement that "[i]f Farries had been *fired* prior to his induction into the Air Force, then he would fail to meet the criteria of § 2021, and thus not be entitled to press a claim under that section." *Id.*

The district court's grant of summary judgment in favor of Stanadyne is AF-FIRMED.

had ample time to conduct discovery since he had two and a half years from the filing of the action and two years and three months from the time of the 12(b)(6) motion; and (2) the Anderson affidavit was attached to the motion

to dismiss. We note also that the record before us is unclear as to whether the appellant ever even asserted a need to pursue discovery to mount a response to the laches defense.