**Marcus B. FELDMAN,**
**Plaintiff–Appellee,**

v.

**Art BAHN, et al., Defendants–Appellants.**

No. 93–1908.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 3, 1993.

Decided Dec. 29, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied March 9, 1994.

Timothy L. Stalnaker (argued), Dowell, Fisher, Harris & Stalnaker, Chesterfield, MO, for plaintiff-appellee.

John L. Gilbert (argued), Rodney W. Phillipe, Reed, Armstrong, Gorman, Coffey, Thomson, Gilbert & Mudge, Edwardsville, IL, for defendants-appellants.

Before WOOD, Jr., FLAUM, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

While serving as an assistant professor of mathematics at Southern Illinois University, Marcus B. Feldman accused a colleague of plagiarism. Chung Wu Ho, the chairman of the department, recommended that Feldman's contract not be renewed, and other officials in the University went along; meanwhile the object of Feldman's accusation received tenure. Feldman began this action under 42 U.S.C. § 1983 against everyone in sight: Ho, three members of a grievance committee that declined to overrule Ho's recommendation, the provost and president of the University, and the University's Board of Trustees (together with all of the Board's members). Feldman believes that Ho and the other defendants sacked him on account of speech protected by the first and fourteenth amendments to the Constitution. He asked for damages and reinstatement, with tenure. For current purposes we must assume that Ho made his recommendation because of Feldman's accusation rather than because of Feldman's scholarship and teaching.

All of the defendants asked the district court to terminate the damages portion of the case on the basis of qualified immunity. After entertaining oral argument, the district court denied the motion. Its full explanation is: "[T]he Court holds that the Plaintiff's pleadings are sufficient to state a cause of action and these Defendants are not entitled to qualified immunity on the facts pled." The court did not say why, and both parties tell us that the judge was no more forthcoming at the argument (which has not been transcribed). Both the parties and this court are entitled to explanations from district judges—the parties so that they may know how to conduct the remainder of the litigation, and this court so that it may know the basis of the district judge's decision. For an order rejecting a claim of qualified immunity is appealable, *Mitchell v. Forsyth*, 472 U.S. 511, 524–30, 105 S.Ct. 2806, 2814–18, 86 L.Ed.2d 411 (1985), and the defendants have appealed. An order denying a claim of immunity is not listed in Circuit Rule 50, so we do not remand for a statement of reasons in compliance with that rule, *Sims v. Lucas*, 9 F.3d 1293 (7th Cir.1993), but we hope that district judges appreciate the need to explain themselves when entering appealable orders. See also, e.g., *In re Shell Oil Co.*, 966 F.2d 1130 (7th Cir.1992); *DiLeo v. Ernst & Young*, 901 F.2d 624, 626 (7th Cir.1990).

Our first step is to dismiss a large chunk of the appeal. The collateral order doctrine elaborated in *Mitchell* permits an appeal by a person seeking qualified immuni-

ty, which entails a "right not to be tried." Only five of the defendants (Ho, the three members of the grievance board, and President Lazerson) have been sued in their personal capacities. The rest have been sued in their official capacities only, to facilitate prospective relief should the district court conclude that Feldman is entitled to reinstatement. The complaint is explicit that only five defendants face personal liability. *Cannon v. University of Health Sciences,* 710 F.2d 351, 356 (7th Cir.1983), holds that Southern Illinois University is a state agency, so the eleventh amendment (more accurately, the doctrine of *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)) bars an award of damages against the University itself. Because an official-capacity suit is effectively one against the institution, the official-capacity defendants share the University's imperviousness to damages. *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985); *Lassiter v. Alabama A & M University,* 3 F.3d 1482, 1484–85 (11th Cir.1993). These defendants therefore are not at personal risk. They do not need qualified immunity, and for that matter are not entitled to claim it. *Owen v. Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (governmental bodies are not entitled to qualified immunity from damages). *Mitchell* does not permit them to appeal from the denial of a motion they did not need to make in the first place, and their appeal is dismissed for want of jurisdiction.

■ Chairman Ho, President Lazerson, and the three members of the grievance board are entitled to appeal. Feldman contends that they are not entitled to immunity, because the principle that public employers may not retaliate for speech on a subject of public concern long predated their action. See *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Connick v. Meyers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987), and similar cases. Defendants reply that no case has ever characterized, as a subject of public concern, one employee's accusations of another's misconduct, made wholly within an employer's administrative structure. They contend that the right Feldman asserted therefore has not been established with the necessary specificity. See *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Rakovich v. Wade,* 850 F.2d 1180, 1207–14 (7th Cir.1988) (en banc); *Greenberg v. Kmetko,* 840 F.2d 467, 472–75 (7th Cir.1988) (en banc).

The principle that a public employee may not be discharged or disciplined for speech protected by the first amendment is qualified. *Pickering* announced that courts must strike a "balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." 391 U.S. at 568, 88 S.Ct. at 1734. Cases since *Pickering* have emphasized that "[t]his balancing is necessary in order to accommodate the dual role of the public employer as a provider of public services and as a government entity operating under the constraints of the First Amendment.... [P]ublic employers are *employers,* concerned with the efficient function of their operations; review of every personnel decision made by a public employer could, in the long run, hamper the performance of public functions." *Rankin,* 483 U.S. at 384, 107 S.Ct. at 2896 (emphasis in original).

Teachers are acutely aware of both sides of the balance. They speak and write for a living and are eager to protect both public and private interests in freedom to stake out controversial positions. Yet they also *evaluate* speech for a living and are eager to protect both public and private interests in the ability to judge the speech of others and react adversely to some. They grade their students' papers and performance in class. They edit journals, which reject scholarly papers of poor quality. They evaluate their colleagues' academic writing, and they deny continuing employment to professors whose speech does not meet their institution's standards of quality. See *Weinstein v. University of Illinois,* 811 F.2d 1091 (7th Cir.1987). "The government" as an abstraction could not penalize any citizen for misunderstanding the views of Karl Marx or misrepresenting

the political philosophy of James Madison, but a Department of Political Science can and should show such a person the door— and a public university may sack a professor of chemistry who insists on instructing his students in moral philosophy or publishes only romance novels. Every university evaluates *and acts* on the basis of speech by members of the faculty; indeed, Feldman proposed that Ho do just this on the basis of his colleague's speech. Lack of originality is a standard reason for denying tenure; Feldman accused his colleague of an extreme version of this defect. Feldman therefore does not deny that speech in a university may be the basis of adverse action; he believes, rather, that the penalty should have fallen on the accused colleague rather than himself. Yet an unsupported charge of plagiarism reflects poorly on the accuser; the first amendment does not ensure that a faculty member whose assessment of a colleague's work reveals bad judgment will escape the consequences of that revelation.

"Under the first amendment there is no such thing as a false idea." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); but cf. *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 17–18, 110 S.Ct. 2695, 2704–2706, 111 L.Ed.2d 1 (1990). Points of view, neither true nor false, struggle for acceptance. There is most certainly such a thing as a false charge of plagiarism, however. If Feldman is right, his colleague committed a grave error, perhaps the crime of copyright infringement. If Feldman is wrong, then he has committed the tort of slander. No one these days believes that penalizing defamation violates the first amendment. See *Rosenbloom v. Metromedia, Inc.,* 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971). There are special rules when the target is a public figure (Feldman's colleague is not), and the Constitution limits presumptive or punitive damages, but our case does not involve these principles. There is no "clearly established" right—there is no right, period—to defame a fellow member of the faculty. "Society has a pervasive and strong interest in preventing and redressing attacks upon reputation." *Rosenblatt v. Baer,* 383 U.S. 75, 86, 86 S.Ct. 669, 676, 15 L.Ed.2d 597 (1966). Defendants therefore

are entitled to immunity, if not to judgment on the whole first amendment aspect of the case. Cf. *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). Whether Feldman *did* defame his colleague is a matter for the University to work out as an original matter, and then perhaps for a court hearing an action under state law. Feldman believes that the University did not investigate his charge properly and that Ho leapt to the colleague's defense rather than keeping an open mind. That may or may not be true, but a university's careless handling of a charge of intellectual dishonesty does not convert an ordinary dispute under the law of torts, or contracts, or the administrative procedures of a public employer, into a violation of the first amendment.

One could recast this in the language of balancing. On receiving a charge of intellectual dishonesty, a university should investigate. Interests weigh on the side of the speaker, on the side of the target, and on the side of the educational mission. If the charge is correct, the plagiarist should be disciplined; if the charge is unfounded, the accuser should be disciplined; if there is some basis for the charge, but the university believes that the accusation is unproven, then no one should be disciplined—for a university does not wish to discourage candid discourse about the quality of work being performed by the faculty. Which of these three outcomes is appropriate depends not on whether plagiarism is a "matter of public concern", *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734, but on the truth of the accusation and the care the accuser took before making it. There are no categorical answers, only a process of investigation and deliberation leading to a disposition one case at a time. This suggests the lack of any clear constitutional right. As we have held repeatedly, the complexity of *Pickering* 's balancing approach makes damages too crude an instrument. As a result, "qualified immunity typically casts a wide net to protect government officials from damage liability whenever balancing is required." *Benson v. Allphin,* 786 F.2d 268, 276 (7th Cir.1986). For similar sentiments in other public employment cases, see *Walsh v. Ward,* 991 F.2d 1344, 1346 (7th Cir.1993); *Green-*

*berg v. Kmetko,* 922 F.2d 382, 384–85 (7th Cir.1991).

The district court should have dismissed the claim for damages under the first amendment. Whether Feldman has a claim for prospective relief, or for damages under state law, remains open in the district court. The appeal is dismissed to the extent we have indicated. On the appeal of the five defendants sued in their personal capacities, the judgment is reversed, and the case is remanded for proceedings consistent with this opinion.

FLAUM, Circuit Judge, concurring in part and dissenting in part.

I concur in the decision to dismiss the appeals of those defendants sued only in their official capacity, but I am only in partial agreement with the majority's disposition of the qualified immunity appeals that are properly before us. I agree with the majority that when presented with an accusation of intellectual dishonesty by one faculty member against another, officials of a public university should be afforded wide latitude in evaluating and acting upon that accusation. Even though acts of academic fraud financed by public monies are matters of clear concern not only to users of the state university system but to all taxpaying citizens, a university cannot function as a credible employer or academic institution without the ability to discipline members of its staff who irresponsibly impugn the integrity of the school or its faculty. Thus, the outcome of a *Pickering* balance is not foreordained when a university responds to a charge of plagiarism with disciplinary action against the accuser after some process of deliberation and investigation. Even when a university's handling of the charge appears careless from a later vantage point, I agree that the balance of speech and employer interests usually will not be so obviously lopsided that responsible officials acting in good faith should forfeit their immunity from personal liability.

If, however, school officials punish an accuser not because of any judgment about the falsity, recklessness or unsupported nature of his charges but simply because they dislike the practice of questioning the work of their colleagues, regardless of the truth or manner of the charge, then I see no legitimate competing interests that could even begin to counterbalance the plain interest the public has in that kind of information being brought to light. It is not surprising that members of a faculty, moved by a profession's instinct for self-preservation, may prefer to close ranks and stifle self-examination than to address the merits of a challenge to the integrity of one of their own. But I think it is evident that a parochial interest in chilling scrutiny of state university professors' scholarly standards is not a valid basis for punishing speech in a public setting, and thus, a university official who fires a school employee solely on such a ground should not enjoy the shelter of official immunity.

I am not at all convinced that this type of speech suppression occurred at Southern Illinois University. However, the qualified immunity defense was raised here on a motion to dismiss whose denial we are now reviewing. As a result, we must take as true the allegations of the complaint and construe them liberally in plaintiff's favor. Our legal conclusions cannot be based on alternate scenarios of this affair that the University may paint once given the chance. (This is why qualified immunity is better raised on summary judgment than on a 12(b)(6) motion, *see McMath v. Gary, Indiana,* 976 F.2d 1026, 1031 (7th Cir.1992).) Looking at the complaint, I find it adequately alleges that defendants Ho's and Bahn's actions were motivated by a personal distaste for the kind of speech Feldman was uttering unconnected to valid institutional concerns.[1] Thus, at this stage in the litigation, I would decline to accord them immunity from damages.

1. Chung Wu Ho was the chairman of the mathematics department and Art Bahn was a member of the grievance committee reviewing the decision to terminate Feldman.