Easterbrook, Circuit Judge.
*470 The City of Kenosha, Wisconsin, hired Comsys to be its information-technology department. Comsys had its offices inside City Hall and stored all of its electronic information on the City's servers. The contract between Comsys and the City automatically renewed from year to year unless terminated, adding that both Comsys and the City "shall have the right, with or without cause, to terminate the Agreement by written notice delivered to the other party at least twelve (12) calendar months prior to the specified effective date of such termination." The City's Common Council voted on June 2, 2014, to end the contract, and the City's Mayor (Keith G. Bosman) delivered formal notice two days later. The contract ended on June 5, 2015.
Comsys then sued everyone in sight-the City, the City's Water Utility (for which Comsys also had worked), the Mayor, the City Administrator (Frank Pacetti), the General Manager of the Water Utility (Edward St. Peter), the City's Director of Information Technology (Merril Kerkman, who moved from Comsys to the City on May 1, 2014), and every member of the Common Council who voted to terminate the contract. Comsys asserted that all defendants had violated the First and Fourth Amendments to the Constitution (applied to these defendants through the Due Process Clause of the Fourteenth Amendment), and are liable under state contract and tort law to boot. The district court dismissed several claims on the pleadings, 223 F.Supp.3d 792 (E.D. Wis. 2016), and later dismissed the Council's members on the ground of legislative immunity. 2017 U.S. Dist. LEXIS 70518 (E.D. Wis. May 9, 2017). The May 2017 opinion also denied motions for summary judgment on the First and Fourth Amendment claims. Mayor Bosman, Administrator Pacetti, and Manager St. Peter have appealed from the order to the extent it rejected their argument for official immunity. See Mitchell v. Forsyth , 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).
The record (read favorably to Comsys) shows that after Kerkman was appointed as Chief Information Officer of Comsys at the beginning of 2013, Administrator Pacetti began to make plans to get rid of Comsys and take the work in-house, under Kerkman's direction. Kathryne McAuliffe, Comsys's CEO and sole owner, got wind of this plan, and hostilities ensued. Kerkman accessed some of McAuliffe's emails and passed information, which may have included trade secrets and other confidences, to Pacetti. While the Police Department was investigating Kerkman on an unrelated matter, McAuliffe told police about his unauthorized access of her emails. She later filed a criminal complaint against Kerkman and Pacetti, and the Sheriff's Office investigated her charges. In May 2014 the Sheriff's Office confiscated the City's servers on the authority of a search warrant. That step caused bad feelings as well as considerable difficulty in getting work done. Within days Mayor Bosman asked the Common Council to end the City's relation with Comsys. McAuliffe wrote to the Common Council, strongly objecting, but the Council sided with the Mayor.
Comsys and McAuliffe contend that the contract's termination violated the First Amendment by penalizing three episodes of speech. Plaintiffs call this "retaliation," but that word does not add anything to the basic claim that the City made protected speech costly by ending a contract that was profitable to Comsys. See Fairley v. Andrews , 578 F.3d 518, 525 (7th Cir. 2009).
Trying to isolate contract administration from speech may be impossible. Even when a contractor serves at a city's pleasure, the deal is unlikely to be called off *471 without some reason. Terminations follow breakdowns of relations. During a breakdown, charges and countercharges are likely; it is impossible to imagine the end to a relation such as the one between Comsys and the City without either side saying something to the other. Words may be harsh and the exchanges acrimonious. If that were enough to permit recovery under the Constitution, however, then the federal courts will have displaced state contract law and effectively nullified agreements allowing termination without cause.
Considerations of this kind led the Supreme Court to hold in Garcetti v. Ceballos , 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006), that a public employee cannot use the First Amendment to block (or get damages for) a discharge that follows things the worker said as part of the job. As the Court saw matters, the managers in a public office must be able to maintain discipline and assure that the office functions as elected officials wish. Id . at 422-23, 126 S.Ct. 1951. The Justices concluded that a public employee is not speaking as a citizen, and therefore is not protected by the First Amendment, when speaking as part of the job.
Neither the Supreme Court nor the Seventh Circuit has considered whether the same principle applies to the administration of public contracts, but every circuit that has addressed the issue has given an affirmative answer. See Decotiis v. Whittemore , 635 F.3d 22, 26 n.1 (1st Cir. 2011) ; Marez v. Bassett , 595 F.3d 1068, 1074 (9th Cir. 2010) ; Walden v. Centers for Disease Control & Prevention , 669 F.3d 1277, 1285 (11th Cir. 2012). That conclusion is sound, especially when the contractor is acting as a de facto branch of a public body. Until 2015 Kenosha used a contract, rather than a civil-service system, to provide its information-technology needs. It should have as much freedom to manage that contractual relation as to manage an internal IT department.
Board of County Commissioners v. Umbehr , 518 U.S. 668, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996), and O'Hare Truck Service, Inc. v. Northlake , 518 U.S. 712, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996), reinforce this conclusion. Those decisions hold that public contractors are treated just like public employees with respect to the rule against hiring and firing to carry out political patronage. If contractors and employees are alike in this constitutional respect, why not others? It is hard to see how there could be a difference; after all, the employment relation is itself a matter of contract under state law, which provides the tenure and conditions of public employment.
At least one aspect of the current suit can be resolved on the basis of the Ceballos principle. The day the Common Council was to vote on terminating the contract, McAuliffe sent it a letter accusing Kerkman (by then a City employee) and Pacetti of unseemly conduct. The letter's stated purpose was to provide the Council's members with "as much information as possible [as] they contemplate[d] options with [Comsys's] contracts." This letter spoke for Comsys as a contractor trying to keep business. True, the letter was not required by the contract, but it dealt with contract administration. If Ceballos, after being told that he was in hot water for what he had written on the job, had penned a letter to his managers protesting his impending discharge, he could not have used the letter's lack of success as the fulcrum of a First Amendment claim. Allowing that step would make Ceballos empty. Our decisions hold that internal memos protesting coworkers' misconduct are not protected by the First Amendment. Forgue v. Chicago , 873 F.3d 962, 966-67 (7th Cir. 2017) ;
*472 Fairley , 578 F.3d at 522. That understanding covers McAuliffe's letter as well.
Two other matters cannot be resolved on the basis of Ceballos . During the initial probe of Kerkman in winter 2014, McAuliffe met with an investigating officer and made statements adverse to him. Then in May 2014 McAuliffe filed a criminal complaint against Kerkman. Both of these steps may have affected the contract but did not occur as part of its administration. Statements given under oath at trial or before a grand jury fall outside the scope of Ceballos , because the "independent obligation [to tell the truth] renders sworn testimony speech as a citizen and sets it apart from speech made purely in the capacity of an employee." Lane v. Franks , --- U.S. ----, 134 S.Ct. 2369, 2379, 189 L.Ed.2d 312 (2014) ; see also Chrzanowski v. Bianchi , 725 F.3d 734, 740 (7th Cir. 2013) ; Chaklos v. Stevens , 560 F.3d 705 (7th Cir. 2009) ; Fairley , 578 F.3d at 524. McAuliffe's statements were not sworn, but neither were they part of her contractual duties.
Still, we recognize that Trigillo v. Snyder , 547 F.3d 826 (7th Cir. 2008), implies that McAuliffe's speech falls within the scope of Ceballos . Trigillo held that the plaintiff's reports of misconduct to external government officials, including the state's attorney general, were part of her employment duties and thus were not protected. Id . at 830. It is difficult to distinguish McAuliffe's complaint from the reports of misconduct in Trigillo . Doubtless the cases are technically distinguishable. McAuliffe reported misconduct at work, while Trigillo did that and also asked for guidance on how to address the misconduct; the latter request seems closer in spirit to Ceballos . Trigillo was her employer's manager of procurement, and she reported misconduct that affected procurement; the connection between Trigillo's job duties and her report thus seems stronger than the connection between McAuliffe's job duties and her complaint. On the other hand, McAuliffe's statements seem designed to influence the performance of the contract, which makes the situation look more like Ceballos .
This means that we face a line-drawing problem. The law does not clearly put McAuliffe's reports on either the protected or the unprotected side. The district judge recognized as much, observing several times that it was necessary to balance interests (the City's interest in having an efficient IT operation versus McAuliffe's interest in protecting her business and reporting someone she believed to be a thief of her emails) to decide whether the First Amendment overrides the City's position. 2017 U.S. Dist. LEXIS 70518 at *23-24, 27. See also Pickering v. Board of Education , 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). To say that the line between protected and unprotected speech is so unclear that a judge must engage in after-the-fact balancing is practically to invite an immunity defense, for only a violation of clearly established law permits an award of damages. White v. Pauly , --- U.S. ----, 137 S.Ct. 548, 196 L.Ed.2d 463 (2017).
It is not enough that the law be established at a high level of generality (such as "protected speech must not be penalized"); doctrine must dictate the resolution of the parties' dispute. Kisela v. Hughes , --- U.S. ----, 138 S.Ct. 1148, 200 L.Ed.2d 449 (2018). It follows that, when case-specific balancing of interests is essential, the law often is not clear enough to permit awards of damages against public officials, in the absence of authoritative case law addressing a comparable situation. See, e.g., Hernandez v. O'Malley , 98 F.3d 293, 296 (7th Cir. 1996) ; Feldman v. Bahn , 12 F.3d 730, 733-34 (7th Cir. 1993) ;
*473 Benson v. Allphin , 786 F.2d 268, 276 (7th Cir. 1986). See also Mullenix v. Luna , --- U.S. ----, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015). We appreciate that balancing can lead to only one outcome when all factors line up the same way; then immunity is unavailable. But here the district court found matters of weight on each side, while plaintiffs rely almost entirely on highly general principles, such as the rule against penalizing protected speech, that do not resolve concrete cases presenting questions in gray doctrinal areas.
Now we arrive at plaintiffs' claim that Pacetti violated the Fourth Amendment by asking Kerkman to provide information that McAuliffe was storing on the City's servers. Kerkman was then the Chief Information Officer of Comsys. By complying with Pacetti's request Kerkman may have violated his fiduciary duty of loyalty to his employer, but that does not translate to constitutional liability for Pacetti. The Fourth Amendment applies only to public actors, which Kerkman was not (yet). See United States v. Jacobsen , 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) (private searches are not subject to the Fourth Amendment).
Plaintiffs insist that Pacetti and Kerkman entered into a conspiracy, which would make Pacetti liable for what otherwise would be a private search, but all plaintiffs seem to mean by conspiracy is that Pacetti asked Kerkman to act. Perhaps the long-term relation between Kerkman and Pacetti, which eventually led to Kerkman's hiring as the City's head of information technology, calls for treating Kerkman as an official agent; the district judge thought that more factual development was essential to decide the merits. 2017 U.S. Dist. LEXIS 70518 at *39. (That conclusion is not before us on an interlocutory appeal. Johnson v. Jones , 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995).) But for purposes of official immunity, the question is whether existing law clearly establishes that a private search is treated as a governmental search when the public and private actors are friends and potential future coworkers.
Plaintiffs do not cite any decision clearly establishing such a rule; we could not find one on our own. To the contrary, established law sets up a multifactor balancing approach that asks just how entangled the public and private actions were. See, e.g., United States v. Crowley , 285 F.3d 553, 558 (7th Cir. 2002). As we've already observed, a claim that relies on multifactor balancing often does not identify a clearly established rule. The district court discussed several of the applicable factors when explaining why the record is not sufficiently developed to decide whether Kerkman was acting as Pacetti's tool. That list of factors and uncertainties is why qualified immunity applies. As the Supreme Court put it in White :
While this Court's case law do[es] not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate. In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law.... As this Court explained decades ago, the clearly established law must be particularized to the facts of the case. Otherwise, [p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.
137 S.Ct. at 551-52 (internal citations and quotation marks omitted). By emphasizing the complexity of determining even in hindsight whether Kerkman was acting on his own or as Pacetti's agent, the district court showed that clearly established law *474 has not "placed the statutory or constitutional question beyond debate."
The same can be said about the appellants' second theme: that Kerkman found the information on the City's own servers. Public employers can inspect their employees' email when that step is reasonable, see Ontario v. Quon , 560 U.S. 746, 130 S.Ct. 2619, 177 L.Ed.2d 216 (2010), with consent, or when the employee lacks an expectation of privacy. The City did not act with Comsys's consent. But neither did the contract between Comsys and the City assert a privacy interest.
The contract did not regulate the City's access to data that Comsys chose to store on the City's equipment. Nor did it require Comsys to use the City's servers for storage. Unlike public employees, who must use their employer's email system (which is a big reason for requiring reasonableness or consent), Comsys and McAuliffe were free to protect their privacy by using Gmail, Yahoo!, or any of a hundred other suppliers of encrypted email services.
As an IT specialist, Comsys surely knew that it could acquire its own domain name and set up an email server on its own equipment, for the greatest possible security. Instead it chose to use the City's servers, without any contractual guarantee of privacy. This puts it in a middle ground: it did not consent to the search (expressly or by implication), but neither did it arrange privacy by contract. Clearly established law does not tell us what expectation of privacy a contractor has in such a situation, which means that the appellants are entitled to qualified immunity.
Qualified immunity protects public employees who do not violate clearly established law. Unless we accept highly general statements-such as "do not invade reasonable expectations of privacy without probable cause"-as clearly establishing the law when the existence of a reasonable privacy interest is itself debatable, these appellants prevail. We have been told by the highest authority not to take general principles as clearly establishing how novel situations must be resolved. It follows that Mayor Bosman, Administrator Pacetti, and Manager St. Peter cannot be ordered to pay damages under 42 U.S.C. § 1983. Whether they face liability under Wisconsin law is a question that we do not address.
To the extent contested on appeal, the district court's decision is reversed, and the case is remanded for further proceedings concerning other claims and other litigants.